**UNITED STATES of America,
Petitioner,**

v.

**Saul FESMAN, in his capacity as President and Custodian of Records for Queen City Home Health Care, Inc., Respondent.**

No. MS-2-91-288.

United States District Court,
S.D. Ohio, E.D.

Dec. 11, 1991.

---

Dana Martin Peters, Asst. U.S. Atty., for petitioner.

Myron Lykins Dale, Cincinnati, Ohio, for respondent.

## OPINION AND ORDER

GEORGE C. SMITH, District Judge.

This matter is before the Court upon issues arising from the October 17, 1991 Order of this Court granting the Government's Summary Enforcement of an Administrative Subpoena against Saul Fesman, in his capacity as President and Custodian of Records for Queen City Home Health Care, Inc. (hereinafter, "Queen City").

## BACKGROUND

In conjunction with the Railroad Retirement Board, the United States Department of Human Services Office of Inspector General (OIG) began conducting an investigation of Queen City Home Health Care Inc., and its President, Saul Fesman. The investigation primarily centered upon allegations that false claims were submitted for reimbursement from the Medicare program in connection with the sale of seat lift chairs.

Allegations include the submission of between 4,000 and 20,000 claims, from 1985 through 1990, to Medicare for new seat lift chairs, when in fact the chairs were used. The difference in reimbursement rates between new and used chairs is approximately $229.00. These actions, if proven, would violate the False Claims Act, 31 U.S.C. § 3729 and a host of Department of Health and Human Services regulations.

On June 7, 1989, a search warrant was issued for a substantial number of documents and business records during the pendency of a criminal investigation by the Government. Counsel for Queen City were informed during the Summer of 1991 that the criminal investigation was completed without an indictment being sought.

A civil investigation by the United States Department of Human Services ensued. The Government sought to have the documents obtained by the search warrant during the criminal investigation remain in their possession for use in connection with a possible civil fraud investigation. Counsel for Queen City sought the return of all documents. At that time, the United States Department of Health and Human Services Office of the Inspector General issued a subpoena for these same documents.

The Government and Queen City agreed that the documents were to be returned to Queen City. Pursuant to the agreement, Queen City promised not to destroy any documents and the Government was entitled to full access to these documents and would be permitted to copy them. The documents at issue here were returned to Queen City on September 5, 1991. Counsel for the Government were scheduled to examine these documents on October 10 and 11, 1991.

The Government then received information that led it to believe that Queen City had been destroying documents relevant to the case during the time of the pending investigation. Upon motion of the Govern-

ment, Magistrate Judge Kemp issued an Order on October 3, 1991 appointing two Special Agents with the United States Department of Health and Human Services as special process servers for the purpose of serving a subpoena for the documents upon Saul Fesman.

Queen City then refused the Government access to the documents during the previously scheduled October 10 and 11, 1991, meeting. As a result, the Government filed a Petition for Summary Enforcement of Administrative Subpoena. On October 17, 1991, this Court issued its Order for summary enforcement instructing Saul Fesman and Queen City to comply with the subpoena and to produce, "all materials responsive to the subpoena by the 28th day of October, 1991, and [to] certify[ ] under penalty of perjury that all responsive documents have been supplied." The Court further ordered that Queen City take no adverse action against any employee for participating with the Government investigation and that Queen City shall not tamper with documentary material which may be the subject of the OIG subpoena.

Queen City then filed a Motion to Quash Administrative Subpoena in the Western Division of the Southern District of Ohio on October 15, 1991.

On October 18, 1991, Respondent filed a Motion to Transfer Venue and Consolidate. This motion requests the Court to transfer venue to the Southern District of Ohio, Western Division and to consolidate this matter with Misc. Case No. 1–91–290 pending before Judge Spiegel.

Queen City, on October 23, 1991, filed a Motion for Relief from Order and to Dissolve Preliminary Injunction. In doing so, it was requested that the Court vacate the summary enforcement of the subpoena and that the injunction prohibiting the tampering with possible evidence be lifted.

Upon advisement on October 28, 1991, by the Assistant United States Attorney that Queen City had informed the Government that it would not transfer the documents as ordered, this Court conducted a telephonic conference call with counsel for all parties. During the course of this conversation, the Court was advised by counsel for Queen City that the October 17, 1991 Order granting summary enforcement would not be honored. Queen City contended during the conference call that their Motion for Relief from Order and to Dissolve Preliminary Injunction, though not previously addressed or ruled upon by this Court, relieved them from any obligation to honor the Order of the Court.

After hearing the respective positions of all counsel for all parties, this Court issued an oral Order. In sum, the oral Order required the following:

1. Queen City must honor the October 17, 1991 Order granting summary enforcement in its entirety, unless otherwise addressed in this oral Order.

2. Queen City must turn over to the United States Marshal at 9:00 a.m., October 29, 1991, all documents subject to the Government's subpoena.

3. The documents must be transported and securely stored, to the satisfaction of the United States Marshal, with costs to Queen City.

4. Should any aspect of the above be found to not be completed in good faith by Queen City, the Court shall issue a citation of contempt which may involve fines and or incarceration against counsel, parties or any other person found to be in violation of this order.

5. Counsel for Government and Queen City are required to provide briefs to the Court no later than 9:00 a.m., November 1, 1991 regarding the compliance by Queen City with the Court's October 17, 1991, Order.

To date, compliance with the Court's October 28, 1991, oral Order has been complete.[1]

## LAW AND ANALYSIS

### COMPLIANCE WITH COURT ORDERS

■ In response to the Court's October 28, 1991, oral Order, counsel for the

---

1. Though the filing of its brief on November 1, 1991 at *12:41 p.m.* is indicative of the attitude of counsel of Queen City to the Court, the violation will not be pressed here.

Government and Queen City submitted briefs as to the enforceability of a Court Order.

The Government argues quite forcefully that a Court Order must be obeyed unless it is stayed, vacated, or overturned by subsequent proceedings. Queen City argues that noncompliance with a Court Order is permissible and the underlying issues should then be argued after the imposition of a citation of contempt.

The United States Supreme Court addressed the issue of the enforceability of a Court Order in stating:

> [W]e find impressive authority for the proposition that an order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings. This is true without regard even for the constitutionality of the Act under which the order is issued.

*United States v. Mine Workers,* 330 U.S. 258, 293, 67 S.Ct. 677, 696, 91 L.Ed. 884 (1947).

Later, in addressing this issue, the Supreme Court stated:

> We begin with the basic proposition that all orders and judgments of courts must be complied with promptly. If a person to whom a court directs an order believes that order is incorrect the remedy is to appeal, but, absent a stay, he must comply promptly with the order pending appeal. Persons who make private determinations of the law and refuse to obey an order generally risk criminal contempt even if the order is ultimately ruled incorrect.

*Maness v. Meyers,* 419 U.S. 449, 458, 95 S.Ct. 584, 591, 42 L.Ed.2d 574 (1975).

Relying upon *Maness,* the United States Court of Appeals for the Ninth Circuit held:

> [N]or could they refuse to obey because they intended later to challenge the command. As the Supreme Court has directed, the proper course of action, unless and until the court's order is invalidated by an appellate court, was for appellants

to comply and cite the order as reversible error should an adverse judgment result. *United States v. Armstrong,* 781 F.2d 700, 707 (9th Cir.1986).

The United States Court of Appeals for the Sixth Circuit recently upheld the position taken by Judge Spiegel of this District in his finding a Defendant in contempt for violating a Court Order. In doing so, the Sixth Circuit relied, in part, upon *Nichol v. Gulf Fleet Supply Vessels, Inc.,* 743 F.2d 298 (5th Cir.1984), which held that, "[T]he district court has jurisdiction to act to enforce its judgment so long as the judgment has not been stayed or superseded." *Id.* at 299 n. 2.

In a ruling that goes directly to the issue present here, the United States District Court for Massachusetts held:

> [T]he filing of a motion to quash or a motion for protective order does not automatically operate to stay a deposition or other discovery. When it appears that a Court is not going to be able to decide a motion to quash ... before the date set for deposition, counsel for the movant should contact counsel for the party noticing the deposition and attempt to reach an agreement staying the deposition until after the Court acts on the motion to quash ... If agreement cannot be reached, it is incumbent on counsel for the movant to file a motion to stay the deposition until the Court acts on the motion to quash ... and to alert the clerk to the need for immediate action
> ...

*Goodwin v. City of Boston,* 118 F.R.D. 297 (D.Mass.1988).

Accordingly, Queen City remains under the full and absolute obligation to honor the October 17, 1991 Order of this Court. Though various and dilatory motions were filed in this and Judge Speigel's Court, the validity of this Court's order was not compromised.

When this Court issues an order, it demands and expects full and prompt compliance.[2]

---

**2.** The Court reminds Attorney Bousquet that a Court Order is not a "proposal" open for negoti-

ation as he continually suggests.

The astounding statement of Attorney Bouquet for Queen City during the October 26, 1991 conference call that he and Defendant fully understood the requirements of the subpoena and subsequent Order for summary enforcement, yet deliberately determined that it would not be honored is clearly a violation of counsel's duty of obedience and is clearly contempt of court.

Queen City argues that non-compliance is an appropriate response to an Order with which they disagree. Further, they assert the right to argue the underlying merits of their position after suffering contempt.

In *United States v. Ryan,* 402 U.S. 530, 91 S.Ct. 1580, 29 L.Ed.2d 85 (1971), the United States Supreme Court stated:

> Of course, if [Ryan] complies with the subpoena he will not thereafter be able to undo the substantial effort he has exerted in order to comply. But compliance is not the only course open to respondent. If, as he claims, the subpoena is *unduly burdensome or otherwise unlawful,* he may refuse to comply and litigate those questions in the event that contempt or similar proceedings are brought against him. Should his contentions be rejected at that time by the trial court, they will then be ripe for appeal. But we have consistently held the necessity for expedition in the administration of the criminal law justifies putting one who seeks to resist the production of desired information to a choice between compliance with a trial court's order to produce prior to any review of that order, and resistant to that order with the concomitant possibility of an adjudication of contempt if his claims are rejected on appeal.

*Id.* at 532, 91 S.Ct. at 1582 (emphasis added).

In the event that disclosure of the subpoenaed information would cause irreparable harm, the United States Court of Appeals for the Sixth Circuit has held:

> A party seeking to contest the validity of the trial court's order must refuse compliance, thereby inviting a contempt citation which, when imposed, becomes an appealable order.

*In re Grand Jury Proceedings—Gordon,* 722 F.2d 303, 306 (6th Cir.1983).

Based upon the case law presented by Queen City, they seem to suggest that should the subpoena and Order for summary enforcement of this Court have been honored that it would have suffered irreparable damages or been subject to circumstances that would have been "unduly burdensome". The Court finds Queen City's argument incredible. The same documents Queen City is so loathe to allow the Government to examine had previously been in their possession for nearly two years. It is inconceivable that significant, non-correctable harm would present itself should Queen City have acted responsibly to a reasonable and appropriate Government subpoena. Further, the contested documents were, as attested by counsel for Queen City, separated from all other business documents in a controlled access room. This segregation, alone, wholly undercuts Queen City's argument that it would be an undue burden to produce the documents.[3]

The only appropriate course of action for Queen City was to file a Request for Stay of the subpoena and subsequent Order for summary enforcement. In choosing not to seek an order to stay, two choices remained for Queen City: to promptly comply with the Court Order or to suffer contempt. Queen City, unfortunately, chose the latter course of action.

For deliberate failure to comply with this Court's valid and enforceable October 17, 1991 Order for summary enforcement of the subpoena, the Court finds Queen City Home Health Care and Attorney Paul Bousquet in CONTEMPT.[4]

---

3. Indeed, after the Court was forced to threaten the contempt and incarceration of Attorney Bousquet's client, Mr. Fesman, the documents were made available, transported and secured by the United States Marshals in less than 24 hours from the time of this Court's oral Order.

4. The United States Supreme Court recently affirmed the District Court's inherent power in assessing attorney's fees as a sanction for bad-

Attorney Bousquet shall pay from his personal funds, not to be passed on to the client, to United States District Clerk for the Southern District of Ohio, the amount of $3,175.00, which includes the cost incurred by the United States' Marshal's Service to enforce this Court's Order. A certified check shall be presented to the Clerk of Courts no later than 12:00 noon on December 17, 1991. Said sum shall be transferred by the Clerk of Courts to the United States Treasury.

Further, a copy of this Order and Opinion shall be transmitted by the Clerk of Courts to the Grievance and Discipline Committees for Ohio and the District of Columbia for their review and appropriate action, if any.

To allow such cavalier and disrespectful conduct on the part of Queen City to go unchecked would plunge the Court into utter chaos. Attorney Bousquet's suggestion that the filing of a Motion to Quash reduces a Court Order to a mere "proposal" that need not be honored is ludicrous. Indeed, the Court believes this position to be but an attempt to obfuscate the enforcement of the subpoena and to delay the Government's access to documents necessary to determine any possible wrongdoing on the part of Queen City. Such conduct only serves to slow already overburdened courts in their administration of justice and it will not be tolerated now or in the future.

### VENUE

28 U.S.C. § 1404 provides, in pertinent part:

(a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

(b) Upon motion, consent or stipulation of all parties, any action, suit or proceeding of a civil nature or any motion or hearing thereof, may be transferred, in the discretion of the court, from the division in which pending to any other division in the same district. Transfer of proceedings in rem brought by or on behalf of the United States may be transferred under this section without the consent of the United States where all other parties request transfer.

(c) A district court may order any civil action to be tried at any place within the division in which it is pending.

■ It is clear that the Court has authority under 28 U.S.C. § 1404 to retain the instant matter or to transfer venue to the Western Division of the Southern District of Ohio.

Government argues that this Court has jurisdiction over the instant matter and that because the greater portion of the Government's efforts and resources are located in Columbus the instant matter should remain here.[5] Queen City provides a host of arguments asserting that the appropriate jurisdiction sounds in the Western Division.

Rule 3.3(c) of the Rules of the United States District Court for the Southern District of Ohio provides that:

An action against a defendant or defendants resident in this district shall be filed at the location of court which embraces a county in which at least one defendant resides.

S.D.Ohio L.R. 3.3(c).

The record and pleadings are quite clear that all defendants are residents, either corporate or personal, of Hamilton County. The fact that Queen City has developed a considerable business presence outside of Hamilton County does not alter the circumstances as addressed by Local Rule 3.3(c).

This Court does not approve of the tedious and vexatious tactics of Queen City in deliberately attempting to pursue the same action in two different courts by filing a motion to quash in the Western Division long after the instant matter was com-

---

faith conduct. *See Chambers v. NASCO, Inc.,* — U.S. ——, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991).

**5.** The Court concurs with the Government that there is no question as to jurisdiction. Queen City certainly has sufficient minimum contacts here that this matter may properly be heard in this Court.

menced here. Nevertheless, an application of Local Rule 3.3(c) is clear that the appropriate venue for the instant matter is in the Western Division. Accordingly, this matter is hereby TRANSFERRED to Judge Spiegel sitting in the Western Division, Southern District of Ohio for his consideration.

## CONCLUSION

The Court, therefore, ORDERS:

1) Attorney Bousquet is hereby found in CONTEMPT and is to pay from his personal funds the sum of $3,175 to the Clerk of Courts for the Southern District of Ohio no later than 12:00 noon on December 17, 1991.

2) Although this Court retains jurisdiction, the appropriate venue under the local rules in this matter is the Southern District of Ohio Western Division. Upon satisfaction of the citation of contempt and the transfer of documents, this matter shall be TRANSFERRED to Judge Spiegel for his consideration.

IT IS SO ORDERED.