In re Wilbur P. HOLLAR and
Ruth C. Hollar, Debtors.

Wilbur P. HOLLAR and Ruth
C. Hollar, Plaintiffs,

v.

William Steven MYERS and Linda
W. Myers, Defendants.

Bankruptcy No. B–93–11389C–7W.
Adv. No. 93–6007.

United States Bankruptcy Court,
M.D. North Carolina,
Winston–Salem Division.

March 21, 1995.

See also, 184 B.R. 25.

Wilbur P. and Ruth C. Hollar, debtors pro se.

Michael Daye, for defendant Myers.

Thomas Holderness, for defendant U.S.

## MEMORANDUM OPINION

WILLIAM L. STOCKS, Bankruptcy Judge.

This adversary proceeding came before the court on January 18, 1995, for hearing upon the motion to dismiss filed by the defendants pursuant to Rule 7037, motions for summary judgment filed by both parties, and for final pre-trial. The plaintiffs-debtors, Wilbur P. Hollar and Ruth C. Hollar, appeared *pro se.* Michael Day appeared for the defendants. For the reasons cited herein, the court will dismiss this adversary proceeding with prejudice.

## DISCUSSION

On December 10, 1992, the Internal Revenue Service conducted a tax sale at which the defendants were the high bidders on a parcel of real property owned by the debtors. The debtors filed a Chapter 13 petition on March 1, 1993 which was dismissed on April 1, 1993. They filed a second Chapter 13 petition on April 29, 1993. After receiving two extensions of time to file their schedules and submit a proposed plan, the debtors filed their schedules on June 16, 1993. In November, 1993, the debtors filed this adversary proceeding in which they seek an adjudication that the tax sale was invalid. Thereafter, the debtors submitted two proposed plans, neither of which was confirmed. On August 10, 1994, the court granted the debtors' motion for voluntary conversion to Chapter 7.

### 1. Motion to Dismiss pursuant to Rule 7037

The defendants have moved to dismiss this adversary proceeding pursuant to Bankruptcy Rule 7037 and Federal Rule of Civil Procedure 37(b)(2)(C). In their motion, the defendants assert that the debtors, the plaintiffs in this adversary proceeding, willfully abused the discovery process by violating a specific court order which directed the debtors to appear for their depositions to be taken.

The procedural history of this case, which is well documented by the record, does not require an exhaustive discussion. Recognizing that the plaintiffs lack formal legal training, the court did not impose sanctions when the plaintiffs failed to attend their first scheduled depositions in February, 1994. When the defendants sought dismissal at that time, the court ordered the debtors to appear for a deposition on April 14, 1994, and to reimburse the defendants for their actual costs. The debtors appeared on that date, but both debtors refused to answer many questions and in some instances invoked the Fifth Amendment as grounds for refusing to answer. On May 24, the court entered an order, accompanied by a memorandum opinion providing the grounds for the entry of the order, that directed the debtors to answer certain questions which were specified in the order. At the debtors' request, the court stayed this order pending an attempted appeal by the debtors. On July 28, 1994, district court denied the debtors' motion for leave to appeal. By this time the date set for the completion of debtors' depositions had passed. Therefore, on October 14, 1994, the court again ordered the debtors to appear for the resumption and completion of their depositions and directed that they answer fully and completely the questions described in the order of May 24, 1994. The new date set for the debtors' depositions was October 27, 1994.

At approximately 4:00 p.m. on October 26, 1994, the defendants received via facsimile a copy of a motion for protective order in regard to the depositions scheduled for the following morning, which was filed by debtors on October 26, 1994. Contrary to the October 14, 1994 order of the court, the debtors did not appear for their depositions on October 27, 1994. The purported motion for protective order was filed by the debtors less than twenty-four hours before their scheduled depositions and simply restated the arguments that earlier were rejected by the court when the May 24, 1994 order was entered. Specifically, the debtors asserted that they could be incriminated by providing any answers other than their names, mailing address, date of filing of their bankruptcy petition and date of filing of their complaint.

■ The last-minute motion for a protective order did not excuse debtors from their obligation to comply with the order of the court. It is well-settled that the filing of a motion for protective order does not automatically operate to stay a deposition or other discovery. *U.S. v. Fesman,* 781 F.Supp. 511, 514 (S.D.Ohio 1991); *Goodwin v. City of Boston,* 118 F.R.D. 297 (D.Mass.1988); *Hepperle v. Johnston,* 590 F.2d 609, 613 (5th Cir.1979). Rather, a deponent is relieved of his or her duty to appear *only* if court order is granted before the scheduled deposition. *In re Lincoln North Associates, Ltd. Partnership,* 163 B.R. 403, 409 (Bankr.D.Mass. 1993); *King v. Fidelity Nat. Bank,* 712 F.2d 188, 191 (5th Cir.1983), *cert. denied,* 465 U.S. 1029, 104 S.Ct. 1290, 79 L.Ed.2d 692 (1984). "Under the Rules, it is for the court, not the deponent or his counsel, to relieve him of the duty to appear." *Lincoln North Assoc.,* 163 B.R. at 409, *quoting Pioche Mines Consolidated, Inc. v. Dolman,* 333 F.2d 257, 269 (9th Cir.1964).

■ A motion for protective order must be supported by good cause incorporating particular and specific demonstration of fact,

not stereotyped and conclusory statements. *Pfeiffer v. Eagle Manufacturing Company,* 137 F.R.D. 352, 353 (D.Kan.1991). Plaintiffs' motion for protective order did not approach this threshold.[1] Not only did it consist exclusively of conclusory statements, it was a mere regurgitation of previous claims that had been carefully considered and rejected by this court. As a result, the court concludes that the motion was filed as a deliberate attempt, in bad faith, to delay further the court ordered depositions. As such it did not excuse the debtors from appearing for their depositions on October 27, 1994, as ordered by the court.

Bankruptcy Rule 7037 and Federal Rule of Civil Procedure 37(b)(2) govern a motion to dismiss and for sanctions based on the failure of a party to abide by a discovery order of the court. This rule provides that the court may make such order in regard to the failure as are just, including striking out the pleadings, dismissing the action, or rendering a judgment by default against the disobedient party.

■ The determination of whether the factual situation of any given case justifies dismissal for violation of a discovery order is left in the sound discretion of the trial court. See *National Hockey League v. Metropolitan Hockey Club,* 427 U.S. 639, 643, 96 S.Ct. 2778, 2781, 49 L.Ed.2d 747 (1976) (per curiam). Dismissal is a severe sanction that is generally not imposed in the absence of bad faith or willful conduct. *Snead v. Automation Industries, Inc.,* 102 F.R.D. 823, 828 (D.Md.1984). The following factors should be considered in deciding whether to impose the severe sanction of dismissal: (1) whether the noncomplying party acted in bad faith; (2) the amount of prejudice the noncompliance caused the adversary, including the materiality of the evidence it failed to produce; (3) the need for deterrence of the particular sort of noncompliance; and (4) the effectiveness of less drastic sanctions. See *Mutual Savings & Loan Assoc. v. Richards,* 872 F.2d

---

1. Plaintiffs also failed to comply with the procedural requirements governing motions for protective orders. Rule 26(c) requires that a motion be accompanied by certification that movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. There is no such certificate accompanying Plaintiffs' motion. As such, the motion is fatally defective on its face. *See, e.g. Republic of Haiti v. Crown Charters, Inc.,* 667 F.Supp. 839, 849 (S.D.Fla.1987).

88, 92 (4th Cir.1989); *Robinson v. Yellow Freight System,* 132 F.R.D. 424 (W.D.N.C. 1990); *Aerodyne Systems Engineering, Ltd. v. Heritage Int'l Bank,* 115 F.R.D. 281 (D.Md.1987).

The court is satisfied that the debtors in this case acted in bad faith. After refusing to appear for their first scheduled depositions and refusing to answer questions at their second scheduled depositions, the plaintiffs ignored a court order and willfully elected not to attend their third scheduled depositions. The last-minute purported motion for a protective order is not a mitigating factor. Rather, it illustrates the debtors' disregard for the expense and inconvenience to the defendants whose counsel appeared to take the scheduled depositions. Pursuant to the order of this court entered on October 14, 1994, the debtors had thirteen days notice of the date of the re-scheduled depositions. They nevertheless waited until late in the afternoon of the day before the scheduled depositions and then filed a meritless motion that simply restated the arguments which had already been reviewed and rejected by this court. The court concludes that the debtors willfully disregarded this court's discovery order and in doing so acted in bad faith.

Second, the defendants have suffered severe prejudice as the result of the debtors' failure to appear for the depositions. The defendants' attorney has appeared for debtors' depositions on three separate occasions after having filed two motions to compel debtors' attendance and has responded to one motion for leave to appeal to the district court and still has not been able to complete the debtors' depositions. Defendants have been required to pay their counsel to engage in unnecessary discovery procedures and attend discovery hearings in this case caused by the recalcitrance of the debtors. The debtors' actions have caused extensive delay in the completion of discovery and the pre-trial hearings and have forced the defendants to incur unnecessary legal expenses. The defendants have been denied access to material evidence through the discovery abuses of the debtors. Because they have been unable to complete discovery in accordance with the rules of discovery, the defendants were forced to continue their motion for summary judgment on at least three occasions. If the debtors were permitted to postpone discovery through this type of action, it would further prejudice the defendants by allowing the debtors to avoid giving their deposition for an indefinite period of time.

Third, the court believes that it must deter this type of noncompliance in order to maintain the efficient administration of justice. The court ruled on a specific matter, denied a motion to vacate its order, granted leave for interlocutory appeal, and stayed execution of the order until the motion for leave to appeal was denied by the district court. If parties are permitted to avoid discovery orders by attempting to relitigate the same objections previously determined to be defective, the rules of discovery would be rendered meaningless, discovery could never be completed and our already crowded court dockets would be burdened with frivolous motions.

Finally, the court is convinced that less drastic sanctions would be wholly ineffective in this case. The debtors have failed to acknowledge that any sanction would ensure that they would comply with the court's order. In fact, they state in their motion that they intend to respond only to questions regarding their name, mailing address, date of bankruptcy petition, and date of the complaint. The court has monitored carefully the discovery and pre-trial phase of this adversary proceeding. The debtors have been given ample opportunity to comply with the required discovery in this case. Every reasonable inference suggests that a lesser sanction would be ineffective and that dismissal is the appropriate sanction in this case.

The debtors have shown a bad-faith disregard for the procedures which govern disputes before this court. The fact that the debtors are *pro se* does not excuse their failure to comply with the rules of discovery and the orders of this court. See *Robinson v. Yellow Freight System,* 132 F.R.D. 424, 428 (W.D.N.C.1990); *Snead v. Automation Industries, Inc.,* 102 F.R.D. 823, 829 (D.Md. 1984). The court recognizes that dismissal with prejudice is a harsh action to be used only in extreme circumstances. *Bonaven-*

*ture v. Butler*, 593 F.2d 625 (5th Cir.1979). However, the court should not condone blatant disregard for legitimate discovery procedure and court orders, particularly where it causes extreme inconvenience and prejudice to opposing parties who are willing to follow the discovery rules and orders entered by the court. The motion to dismiss pursuant to Rule 37(b)(2)(C) should be granted.

### 2. Summary Judgment

After hearing arguments regarding the Rule 37 motion to dismiss and that matter under advisement, the court heard the cross-motions for summary judgment at the hearing on January 18, 1995. The court agrees that this dispute is ripe for summary judgment and also will issue its ruling at this time with respect to the motions for summary judgment. After considering the motions and supporting documents, the court concludes that the defendants are entitled to summary judgment in their favor on all claims asserted by the plaintiffs.

 Summary judgment is appropriate when there are no genuine issues as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.Pro. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). In considering a motion for summary judgment, the court is required to view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986); *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir.1994). In considering the cross-motions, the court accepts as true all of the affidavits submitted by the plaintiffs in support of their motion for summary judgment and in opposition to defendants' motion and concludes that the defendants nonetheless are entitled to judgment as a matter of law.

The complaint contains five separate claims for relief. Claim three was dismissed at an earlier stage in this proceeding. The remaining claims are addressed in sequence.

### A. Action to Quiet Title

The debtors seek to quiet the defendants' interest in the subject property by challenging the validity of the Internal Revenue Service ("IRS") auction sale. The debtors contend that the sale should be deemed invalid because the Internal Revenue Service violated the statutory and regulatory requirements for conducting a tax sale. They support this contention with their sworn declaration and a sworn statement by Hugh M. Parker, the IRS Revenue Officer who was responsible for the sale of their property. In addition, a copy of the District Director's deed was attached as a supporting exhibit in the debtors' complaint and incorporated into their summary judgment motion by reference.

The plaintiffs contend that the Internal Revenue Service committed numerous infractions of the regulations regarding tax sales, including:

(a) failing to serve form 668–B–"Levy" upon them personally as required by the Internal Revenue Manual;

(b) failing to secure prior written approval from the Branch Collection Chief prior to seizure in violation of the IRS Manual;

(c) failing to secure approval of the District Director prior to seizure of the principal residence as required by 26 U.S.C. § 6334(e);

(d) failing to serve notice personally as required by 26 U.S.C. § 6335(a);

(e) failing to fully and properly describe the property to be seized in the Notice of Seizure as required by 26 U.S.C. § 6335(a);

(f) violating the procedures for determining the minimum bid for the property as established by the IRS Manual;

(g) failing to serve proposed minimum bid notices personally upon debtors specifying their rights to contest the minimum bid;

(h) failing to serve Notice of Sale personally upon debtors as required by 26 U.S.C. § 6335(c);

(i) failing to fully and properly describe property to be sold in notices as required by 26 U.S.C. § 6335(c);

(j) failing to notify the debtors of their rights of redemption pursuant to 26 U.S.C. § 6337(b);

(k) failing to inform debtors of their redemption rights as required by the IRS Manual;

($l$) failing to fully and properly describe the property in publication as required by 26 U.S.C. § 6335(b);

(m) failing to post Notice of Sale at the Post Office nearest the alleged seized property as required by 26 U.S.C. § 6335(b);

(n) failing to post Notice of Sale in at least two other public places in addition to Post Office as required by 26 U.S.C. § 6335(b);

(o) failing to deliver timely seized property sale reports to debtors as required by IRS Manual;

(p) failing to exercise due and necessary diligence to delivery all notices as required by the Internal Revenue Code, regulations under the Code, revenue rulings and procedures of the IRS Manual; and

(q) failing to preserve the homestead exemption as provided under N.C. law.

Based upon the materials submitted by the plaintiffs themselves, including the affidavit of Mr. Parker, the court concludes that the measures taken by the IRS in conducting the tax sale fulfilled, and in many cases exceeded, the requirements and procedures established by applicable law for such a sale. To the extent that there were any minor deviations from technical sale procedures, these deviations were at the request of the debtors and did not prejudice them in any way.

■ Most of the allegations of impropriety center around the method by which the debtors received notice of the seizure and scheduled tax sale. The debtors claim that they did not receive proper personal service of the 668–B "Levy" form [claim (a)], Notice of Seizure [claim (d)], proposed minimum bid

notices [claim (g)], and Notice of Sale [claim (h)]. An examination of the debtors' own evidence, however, demonstrates that, contrary to debtors' allegations, these documents were served properly.

■ In general, the foregoing sale documents should be presented to the taxpayer in person or should be provided to the taxpayer at his/her home or place of business.[2] According to the undisputed Parker affidavit, at 9:30 a.m. on October 23, 1992, Revenue Officer Parker (accompanied by Revenue Officer James B. Wilson) attempted to deliver the seizure documents[3] to the debtors at Dr. Hollar's office. Dr. Hollar's receptionist informed the officers that Dr. Hollar could not see them until late in the afternoon and informed them that Mrs. Hollar was at the Hollar residence. The officers then went to the Hollar residence, knocked on the door and heard voices inside, but no one answered the door. A sign posted on the door warned federal officers not to trespass and included the statement "Survivors Will Be Prosecuted." It directed that any contact with the Hollars should be made by mail and listed the business address as the address to contact the debtors. It was signed by the Hollars. Mr. Parker, understandably, was reluctant to leave the documents behind the screen door or attach them to the door. The officers returned to the office and mailed them, return receipt requested, to the debtors' business and residence. Certified mail receipts were signed by Mr. Hollar (October 28, 1992) and the debtors' adult daughter (October 24, 1992). Likewise on November 4, 1992, the Notice of Public Auction Sale was mailed to the residence and business address by both regular and certified mail.

Clearly, the officers made every reasonable effort to serve these documents personally upon the debtors. When they were unable to do so, they followed the debtors' own

---

**2.** Internal Revenue Manual § 56(12)(5) requires that the 668–B "Levy" form should be presented and read to the taxpayer and that Part 3 should be provided or left at the taxpayer's home or business. 26 U.S.C. § 6335(a) requires that the Notice of Seizure should be given to the owner of the property or left at the home or business. The same requirement applies for the personal service of the Notice of Sale. The Minimum Bid Worksheet may be served by personal delivery or by both certified and regular mail. Internal Revenue Manual § 56(13)(5)(4).

**3.** Form 668–B, "Levy"; Notice of Seizure; and Form 4585, Minimum Bid Worksheet. The Notice of Sale was served on November 4, 1992.

instructions about how to contact them. The debtors received the documents more than five weeks before the scheduled auction sale.[4] It would be unjust to permit the debtors to refuse to answer the door, issue not-so-subtle threats to the officers, demand service by mail, and then successfully challenge the sale based on the assertion that service by mail is inadequate. Permitting such a result would threaten the integrity of the procedure for collection of overdue taxes. Based upon the undisputed facts, the service was sufficient.

▮ The debtors' other claims regarding the sale are utterly without merit. They allege that the description of the property was inadequate in the Notice of Seizure [claim (e)], Notices of Sale [claim (i)], and publication of notices [claim (l)].[5] The undisputed facts in the record reveal that the description of the property used by the Internal Revenue Service is the same one that appears in the deed through which the debtors originally received the property and that the debtors used in their complaint, motions, and legal memoranda in this case. This description very easily meets the requirements for a tax sale conducted by the IRS.

The debtors claim that the IRS failed to post Notice of Sale at the Post Office nearest the property [claim (m)] and failed to post in at least two other places [claim (n)].[6] Yet, the debtors' own evidence[7] in this case demonstrates that the IRS posted the Notice of Sale at post offices in Winston–Salem and Kernersville, on the property, in the Kernersville municipal building, and in other places. This portion of the claim is spurious.

The debtors assert that the IRS violated the procedures in its manual when it calculat-

ed the minimum bid that would be accepted for their property [claim (f)]. Mr. Parker's sworn affidavit, uncontradicted and attached to debtors' motion and brief, establishes that the calculation complied with the manual.[8] Debtors also assert that the IRS failed to notify them of their legal redemption rights pursuant to 26 U.S.C. § 6337(b) and the IRS Manual [claims (j) and (k)]. However, their own evidence confirms that Mr. Parker informed them of their redemption rights in the Notice of Sale which they received on November 6, 1992. The debtors claim that the Revenue Officer failed to secure prior approval from the Branch Collection Chief as required by the IRS Manual [claim (b)]. Again, their own evidence contradicts this claim. Internal Revenue Manual § 56(12)(1.2)(1) provides that the revenue officer will submit the complete case file and levy form to the group manager for review. In his sworn declaration, Mr. Parker stated plainly that he sought and received approval from the group manager before delivering the levy form and that "all statutory and procedural requirements were followed in effecting the seizure and sale of this property." Similarly, the debtors claim that the IRS failed to secure approval of the District Director or Assistant Director prior to seizure as required by 26 U.S.C. § 6334(e) [claim (c)]. This section only applies to the seizure of a principal residence. Since the IRS did not seize the principal residence of the debtors in this case, whether or not such approval was sought or acquired is immaterial.

The final claims concern the actual conveyance of the property to the Myers after the 180 day redemption period expired. Initial-

---

4. The sale was scheduled and conducted between 10 and 40 days from the issuance of the public notice in compliance with 26 U.S.C. § 6335(d).

5. 26 U.S.C. § 6335(b), governing Notice of Sale, simply provides that "notice shall *specify the property* to be sold, and the time, place, manner and conditions of the sale thereof." The Notice of Seizure must include "a description with reasonable certainty of the property seized." 26 U.S.C. § 6335(a).

6. In this case it was not even necessary for Notice of the Sale to be posted in these locations because the IRS met its notice requirements

through placing an ad in the Winston–Salem Journal, a newspaper generally circulated within the county where the property is located. 26 U.S.C. § 6335(b) only requires notice to be posted if there is no newspaper published or generally circulated in the county. The IRS exceeded the requirements.

7. The affidavit of Revenue Officer Parker.

8. The minimum price for the sale on December 10, 1992, was set at $7,745.39. On July 14, 1992, the Hollars, in a financial statement submitted under penalties of perjury, listed the market value of this property at $8,000.00.

ly, the debtors contend that they did not receive timely seized property sale reports as required by the IRS Manual [Claim (o)]. They also made blanket claims about the failure of the IRS to exercise due diligence in delivering notices, [claim (p)], and the negligence of the District Director in issuing the Deed of Real Estate. The uncontradicted evidence demonstrates that the IRS provided the Hollars with a copy of the seized property sale report.

The debtors' evidence also establishes that the final conveyance of the real property was proper. On June 29, 1993, the District Director of the Internal Revenue Service granted a deed of Real Estate to the purchasers. The District Director's deed recites that the sale was conducted in accordance with 26 U.S.C. §§ 6331–6442, that public notice was given according to statute, and that the original Certificate of Sale was delivered to the grantor as required by statute. According to 26 U.S.C. § 6339(b)(1), the deed of sale shall be prima facie evidence of the facts stated therein. Thus, the recitals in the District Directors' Deed, evidence offered *by the plaintiffs*, are prima facie evidence that the sale was conducted according to statute. The sworn declaration of Revenue Officer Parker confirms that the IRS complied with all requirements for a valid tax sale.

If the tax sale is conducted "substantially in accordance with the provisions of law, [the District Director's deed] shall be considered and operate as a conveyance of all the right, title, and interest the party delinquent had in and to the real property thus sold at the time the lien of the United States attached thereto." 26 U.S.C. § 6339(b)(2). It is clear that the IRS operated in accordance with the regulations. Indeed, in several instances they exceeded the legal requirements. Based on the evidence presented by the plaintiffs at the summary judgment hearing, the court concludes that there are no genuine

issues of material fact regarding the validity of the sale and that the defendants are entitled to judgment as a matter of law. The action to Quiet Title is denied.

## B. Fraudulent Conveyance claim

In a separate claim, the debtors assert that the tax sale constitutes a fraudulent conveyance in violation of 11 U.S.C. § 548(a)(2). Section 548 authorizes the trustee to avoid a transfer of an interest in the debtor's property that occurred within one year of the date of the petition if the debtor received less than "reasonably equivalent value" for such transfer. To avoid a transfer under this section, the plaintiff must establish:

> (1) that the debtor had an interest in property; (2) that a transfer of that interest occurred within one year of the filing of the bankruptcy petition; (3) that the debtor was insolvent at the time of the transfer or became insolvent as a result thereof; and (4) that the debtor received "less than reasonably equivalent value in exchange for such transfer."

*BFP v. Resolution Trust Corp.,* — U.S. —, —, 114 S.Ct. 1757, 1760, 128 L.Ed.2d 556 (1994). The debtors claim that the tax sale is avoidable under this section because the $8,200.00 purchase price paid by the defendants was below the "fair market value" of $18,700.00 at the date and time of the auction sale. This claim hinges on whether the purchase price paid by the defendants amounted to reasonably equivalent value.

In *BFP,* the Supreme Court rejected the proposition that "reasonably equivalent value" is the equivalent of the fair market value.[9] The Court held that "a fair and proper price, or a 'reasonably equivalent value' for foreclosed property, is the price in fact received at the foreclosure sale, so long as all

---

9. The Court explained the distinction:
" 'The market value of . . . a piece of property is the price which it might be expected to bring if offered for sale in a fair market; not the price which might be obtained on a sale at public auction or a sale forced by the necessities of the owner, but such a price as would be fixed by negotiation and mutual agreement, after ample time to find a purchaser, as between a vendor

who is willing (but not compelled) to sell and a purchaser who desires to buy but is not compelled to take the particular . . . piece of property.' Blacks Law Dictionary 971 (6th Ed.1990). In short, 'fair market value' presumes market conditions that, by definition, simply do not obtain in the context of a forced sale." *BFP,* — U.S. at —, 114 S.Ct. at 1761.

the requirements of the State's foreclosure law have been complied with." *BFP,* —— U.S. at ——, n. 3, 114 S.Ct. at 1765. The Court, however, limited its holding to mortgage foreclosures stating that the "considerations bearing upon other foreclosures and forced sales (to satisfy tax liens, for example) may be different." *BFP,* —— U.S. at ——, n. 3, 114 S.Ct. at 1761, n. 3. The debtors rely on this limiting language for their contention that, for purposes of the tax sale of their property, the defendants did not pay a reasonably equivalent value.

■■■ The debtors, however, fail to recognize that "market value, as it is commonly understood, has no applicability in the forced-sale context; indeed, it is the very *antithesis* of forced-sale value." *BFP,* —— U.S. at ——, 114 S.Ct. at 1761 (emphasis in original). As with property sold at foreclosure, time and procedural constraints in tax sales reduce the value of the interest of the property owner. The court believes that the rationale articulated for concluding that market value cannot be the criterion of equivalence in foreclosure sales has equal relevance and applicability in the context of IRS tax sales. *See In re McGrath,* 170 B.R. 78, 82 (Bankr.N.J.1994) ("A tax foreclosure is as much a forced sale process as a mortgage foreclosure."). The similarities between the two types of forced sales is clear after examination of the procedural safeguards afforded to them.

In each instance, the applicable statute requires posting of a public notice of sale. Both types of sale are conducted by public auction with competitive bidding. The property owner is then granted a period of time to exercise the equity of redemption. In fact, the protections afforded property owners at IRS tax sales, such as a minimum acceptable bid and a long (six months) redemption period, are arguably *greater* than those provided in most foreclosure statutes.

This conclusion is supported by recent decisions applying the reasoning of *BFP* to state tax foreclosure sales. See *In re McGrath,* 170 B.R. 78 (Bankr.D.N.J.1994) (applies *BFP* rule to find that purchase price in New Jersey tax foreclosure sale was "reasonably equivalent value" for the debtor's

interest in the property under 11 U.S.C. § 548(a)(2)(A)); *In re T.F. Stone Companies, Inc.,* 170 B.R. 884 (Bankr.N.D.Tex.1994) (*BFP* rationale is likewise compelling in concluding that price obtained at properly-conducted, noncollusive tax foreclosure sale presumptively meets the "present fair equivalent value" standard in § 549(c)); *but see In re Butler,* 171 B.R. 321 (Bankr.N.D.Ill.1994) (notwithstanding *BFP,* adherence to state law procedures with respect to a tax sale does not preclude an investigation as to whether the debtor received less than "reasonably equivalent value" for her property).

The court has already examined the method by which the tax sale was conducted and concluded that it was in accordance with applicable law. Since it was a properly-conducted sale, the purchase price represented a "reasonably equivalent value" for purposes of the fraudulent conveyance section of 11 U.S.C. 548(a)(2)(A). Therefore, the fraudulent conveyance claim fails as a matter of law.

## C. Unauthorized post-petition transaction

■■■ The debtors also contend that the conveyance of the IRS District Director's deed after the debtors were in Chapter 13 was an unauthorized post-petition transaction that may be set aside under 11 U.S.C. § 549(a). Under this section, the Trustee or debtor may avoid a transfer of property of the estate that occurs after the commencement of the case and is not authorized by the court or the Bankruptcy Code. The undisputed facts in this case demonstrate that there was no unauthorized postpetition transaction and that the defendants' motion for summary judgment on this claim should be granted.

■■■ There are no factual disputes regarding this claim. After the tax sale was conducted on December 10, 1992, the debtors retained a 180–day right of redemption pursuant to 26 U.S.C. § 6337. Their Chapter 13 petition, filed on April 29, 1993, automatically extended the redemption period for 60 days from the date of filing. 11 U.S.C. § 108(b); *In re Jackson,* 173 B.R. 637 (Bankr.N.D.Ill.

1994). On June 29, 1993, 60 days after their Chapter 13 petition was filed and more than 180 days after the tax sale, their redemption rights expired. When the redemption period expires, the bankrupt's estate ceases to have any interest in the real estate. *In re Jackson*, 173 B.R. 637 (N.D.Ill.1994). The IRS properly waited until after the debtors' redemption rights had expired before issuing the District Director's Deed to the defendants. Because the expiration of the redemption period had extinguished the debtors' rights in the property, there was no transfer of property in violation of § 549. *In re Tabor Enterprises*, 65 B.R. 42 (N.D.Ohio 1986).

### D. Declaratory Relief

Finally, the plaintiffs brought an action for declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202. They request a declaration establishing the interest, rights and title of the parties to this property. As the court has already ruled on the disputes regarding the ownership of this property and concluded that the debtors' interest in the property was terminated upon the expiration of the redemption period, there is no reason to discuss further their interest in this property. The request for declaratory relief should be denied.

### CONCLUSION

The defendants are entitled to have this action dismissed with prejudice on two distinct grounds. First, as outlined above, the defendants are entitled to have their motion to dismiss pursuant to Rule 37(b)(2) granted. In addition, for the reasons stated above, defendants also are entitled to have their motion for summary judgment granted.