**In re Shirley RUSSELL–POLK, Debtor.**

**Shirley RUSSELL–POLK, Plaintiff,**

v.

**Robert BRADLEY, Defendant.**

**Bankruptcy No. 95–45488–399.**
**Adv. No. 96–4059–399.**

United States Bankruptcy Court,
E.D. Missouri,
Eastern Division.

Sept. 4, 1996.

Norman W. Pressman, St. Louis, MO, for Debtor.

John V. LaBarge, Jr., Standing Chapter 13 Trustee, St. Louis, MO.

Elbert Dorsey, St. Louis, MO, for Robert Bradley.

T.J. Mullin, Clayton, MO.

## MEMORANDUM OPINION AND ORDER

### INTRODUCTION

BARRY S. SCHERMER, Bankruptcy Judge.

In *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994), the Supreme Court held the consideration received from a noncollusive, real estate mortgage foreclosure sale conducted in accordance with state law conclusively satisfies the Bankruptcy Code's § 548 requirement that transfers of property by an insolvent debtor the year prior to filing be in exchange for a "reasonably equivalent value." The Court limited its holding to mortgage foreclosure sales when Justice Scalia wrote: "The consideration bearing upon other foreclosures and forced sales (to satisfy tax liens, for example) *may* be different." *Id.* at —— n. 3, 114 S.Ct. at 1761 n. 3 (emphasis added). This case presents that issue which the Court did not address, specifically, whether *BFP* applies to properly conducted real property tax sales.

### JURISDICTION

This Court has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157, 1334 and Local Rule 9.01(B) of the United States District Court for the Eastern District of Missouri. This is a "core proceeding" which the Court may hear and enter appropriate judgements pursuant to 28 U.S.C. § 157(b)(2)(H).

1. The property at issue is 7007 Robbins Avenue, St. Louis, Missouri, 63133.

2. The Bankruptcy Code is 11 U.S.C. §§ 101–1330. All future references are to Title 11 unless otherwise indicated.

### STATEMENT OF FACTS

On August 28, 1995, Robert Bradley (the "Buyer") purchased residential property [1] owned by Shirley Russell–Polk (the "Debtor") at a tax sale for $1,279.00. Less than three (3) weeks later, the Debtor sought Chapter 13 relief. She seeks to avoid the sale and recover her residential property as a fraudulent transfer under 11 U.S.C. § 548. [2]

The undisputed evidence is that the Collector of Revenue for the County of St. Louis (the "Collector") issued a statement [3] in May, 1995 which listed the amount of delinquent taxes for 1990, 1992 and 1993 at $1,222.38 and which valued the property at $1,980. After the residence was sold, the Collector issued a September, 1995 statement listing the value at $3,100.

Debtor moves for summary judgement. At a hearing on her motion, the parties agreed that the facts were not disputed and that the issues to be decided in this case are questions of law.

Debtor factually distinguishes *BFP* See Debtor's Memorandum in Support of Motion for Summary Judgement at 3 n. 1. Debtor further argues that Missouri law values residential property at nineteen percent (19%) of market value: a valuation which, by its terms, is less than reasonably equivalent value. Buyer contends that *BFP* applies and encourages the Court to extend its holding to tax sales.

### DISCUSSION

Section 548 of the Bankruptcy Code provides in relevant part:

(a) The trustee may avoid any transfer of an interest of the debtor in property ... that was made ... on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

3. The May, 1995 statement read: "THE REAL ESTATE PROPERTY DESCRIBED ABOVE WILL BE OFFERED FOR SALE IN THE AUGUST TAX SALE. IT WILL BE OFFERED FOR THE THIRD AND FINAL TIME WITH NO REDEMPTION POSSIBLE AFTER THE SALE. FOR INFORMATION PLEASE CALL 889–2208."

(2)(A) received less than a reasonably equivalent value in exchange for such transfer ...; and

In order to avoid a transfer under this section, the trustee must prove by a preponderance of the evidence that (1) there was a transfer [4] of interest of the debtor in property, (2) the transfer was made within one year before the date of the filing of the petition, (3) the debtor was insolvent on the date the transfer was made, and (4) the debtor received less than a reasonable equivalent value in exchange for the transfer. *In re Young*, 82 F.3d 1407, 1414 (8th Cir.1996). Only the fourth requirement is disputed in the present case.

## I. The Rationale of *BFP v. RTC*

Debtor's first argument—that *BFP* is inapplicable to the instant case—is not decided by footnote 3. Accordingly, a discussion of *BFP* and its rationale is essential in determining whether its holding applies in the tax sale context. *See e.g. In re Comis*, 181 B.R. 145, 149–150 (Bankr.N.D.N.Y.1994) ("The fact that [the majority] expressly declined to extend the holding of *B.P.* to other forced sales ... does not prevent this Court from doing so based on the facts presently before it.").

In *BFP*, the debtors took title to a home subject to a $356,250 first mortgage held by the Imperial Savings Association ("Imperial")[5] and a $200,000 second mortgage held by another lender. *BFP*, 511 U.S. 531 at ——, 114 S.Ct. 1757 at 1759. Debtors defaulted on their obligation to Imperial which forced Imperial to accelerate the note and to commence foreclosure proceedings. Ultimately, the house sold at a mortgage foreclosure sale for $433,000. *Id.* Within a year, the debtors filed a Chapter 11 petition and sought to set aside the mortgage foreclosure sale arguing that the house was worth $725,000 and that the sale constituted a fraudulent transfer under § 548. *Id.* A five to four majority held that "reasonably equivalent value" for foreclosed property is the price

received at a properly conducted, noncollusive foreclosure sale *Id.* at ——, 114 S.Ct. at 1765.

The majority first noted Congress' choice to use "reasonably equivalent value" instead of "fair market value" in § 548(a)(2). In light of the fact, that Congress used "fair market value" in § 522(a)(2), the court presumed the choice was intentional. *BFP*, 511 U.S. at ——, 114 S.Ct. at 1761. "Market value, as it is commonly understood, has no applicability in the forced sale context." *Id.*

The court readily acknowledged that the time strictures of a forced sale simply made the property worth less than market value, *Id.* at ——, 114 S.Ct. at 1762, but stressed that this forced sale factor could not be considered any more than other price affecting characteristics in determining equivalence. *Id.* The court also rejected a "reasonable" forced sale and the formulaic interpretations other courts applied in determining "reasonably equivalent value" concluding that the Bankruptcy Code gave the judiciary no authority to make such policy determinations. *Id.* at ——, 114 S.Ct. at 1762. This Court concludes that a tax sale conducted according to Missouri statutes creates a forced sale that does not generally result in realization of fair market value. The short period of time during which the property is offered for sale produces a value other than a fair market value, but one which may be a "reasonable" value under the circumstances.

Now, this Court must decide whether property sold at a tax sale yields the reasonably equivalent value of property. To make this determination a comparison of Missouri mortgage foreclosure procedure must be made with the analogous procedures of a tax sale. *See McGrath*, 170 B.R. at 81–82; *Lord*, 179 B.R. at 433; *Hollar*, 184 B.R. at 252 (each comparing the relevant state mortgage foreclosure procedure with the tax foreclosure procedures). This Court believes the important inquiries in comparing these pro-

---

**4.** § 101(54) defines "transfer" as "every mode, direct or indirect, absolute o conditional, voluntary or involuntary, of disposing of or parting with property.... including ... foreclosure of the debtor's equity of redemption."

**5.** RTC acted a receiver for Imperial Savings Association, the original maker of the note secured by the first deed of trust on the home. 511 U.S. 531 at —— n. 1, 114 S.Ct. 1757 at 1759 n. 1.

cedures are whether each law provides similar protections and notice to the owner and whether each procedure ensures competitive bidding.

Neither party challenges the fact that the tax sale was conducted in compliance with Missouri law. Therefore, a general comparison of each type of forced sale should determine whether the protections afforded an involuntary seller are similar in both contexts.

## II. Foreclosure Sales under Missouri Law

Although Missouri has a statutory provision for judicial foreclosure, Mo.Rev.Stat. §§ 443.190–443.280 (1994), it is an option and most foreclosures are performed according to terms of security agreements with power of sale. *See generally* I. MO. Real Estate Practice §§ 9.1–9.38 (1996). After default and acceleration of an obligation owed a creditor secured by real property, the creditor must comply with specific notice and publication requirements. Mo.Rev.Stat. § 443.320; § 443.325 (1994). An owner must be given a minimum of twenty (20) days notice of a real estate sale conducted pursuant to a power of sale clause. Mo.Rev.Stat. § 443.310. Missouri does not statutorily prescribe a manner by which to conduct the sale, but case law requires proceeds to be used to satisfy expenses of sale, balance due on debt secured by the deed of trust, with the balance going to the mortgagor or his successors. *See e.g. Farris v. Hendrichs*, 413 S.W.2d 185 (Mo. 1967). The mortgagor may redeem the property at any time prior to the foreclosure sale, and further, the mortgagor is granted the limited remedy of statutory redemption. Mo.Rev.Stat. § 443.410 (1994).

In a tax sale, delinquent taxes become a lien on the subject property and the county collector is required to enforce such lien according to Missouri law. Mo.Rev.Stat. § 140.010 (1994). The collector is required to make a "land delinquent list" describing lands on which taxes are delinquent. Mo. Rev.Stat. §§ 140.030–140.040 (1994). A back tax list is made by the county clerk listing the delinquent land tracts, the record owners and the amounts due on each tract. Mo.Rev. Stat. § 140.060 (1994). An interested party may redeem by paying the amount of the state's lien plus interest. Mo.Rev.Stat. § 140.110 (1994). All land upon which taxes are delinquent are subject to sale to discharge the lien. Mo.Rev.Stat. § 140.150.1 (1994). Notice of sale with specific information is required before property may be sold for taxes without judicial proceeding. *See* Constitution of Missouri Art. X § 12; Mo. Rev.Stat. § 140.150.2; § 140.170 (1994). Furthermore, county collectors must also comply with specific notice and publication requirements in the three (3) weeks preceding the tax sale. Mo.Rev.Stat. § 140.170 (1994).

The Missouri legislature further statutorily proscribed the manner of such tax sales. *See* Mo.Rev.Stat. §§ 140.190–140.330 *cf.* Mortgage Foreclosure Sales. Significantly, Missouri law provides a right of redemption for two (2) years to the owner or occupant of the land. *See* Mo.Rev.Stat. §§ 140.340–140.400 (1994). In the event redemption is not made, the purchaser may produce the certificate of purchase and may take deed to the land. Mo.Rev.Stat. § 140.420 (1994). In short, Missouri statutory law details the notice, sale and redemption requirements for a valid tax sale.

After reviewing the procedures for each type of forced sale, this Court is convinced that the reasoning of *BFP* should apply to tax sales in Missouri. As one opinion stated:

> In each instance, the applicable statute requires posting of a public notice of sale. Both types of sale are conducted by public auction with competitive bidding. The property owner is then granted a period of time to exercise the equity of redemption.

*In re Hollar*, 184 B.R. 243, 252 (Bankr. M.D.N.C.1995). The same protections are afforded by both mortgage foreclosure and tax foreclosure procedures in Missouri, and this Court finds, and is offered, no persuasive reason not to apply *BFP* to forced tax sales in Missouri. In fact, other bankruptcy courts have applied *BFP* in identical circumstances. *Id.; In re McGrath*, 170 B.R. 78 (Bankr.D.N.J.1994); *In re Lord*, 179 B.R. 429 (Bankr.E.D.Pa.1995); *In re Hollar*, 184 B.R. 243 (Bankr.M.D.N.C.1995); *In re Gold-*

*en,* 190 B.R. 52 (Bankr.W.D.Pa.1995); *Cf. In re Butler,* 171 B.R. 321, 327 n. 6 (Bankr. N.D.Ill.1994) (questioning, in dicta, whether *BFP* should apply to tax sales in Illinois since tax sale bids are in no way based on the value of the subject property).

Debtor argues that Missouri law "values" residential property[6] at nineteen percent (19%) of its market value. Debtor misreads Mo.Rev.Stat. § 137.115.5(1) which provides in relevant part:

> All subclasses of real property, as such subclasses are established in section 4(b) of article X of the Missouri Constitution and defined in § 137.016, shall be *assessed* at the following percentages of true value: (1) For [residential property as defined in § 137.016.1(1) ] nineteen percent;

(emphasis added).

Debtor's argument misconstrues the tax sale procedure in Missouri. First, the statute does not value the residential property at nineteen percent (19%) of its fair market value; it assess the value at nineteen percent. Once a tax foreclosure sale is commenced, the subject property is opened to the competitive bidding system, very much like a mortgage foreclosure sale. *See* Mo. Rev.Stat. § 140.190 ("The person offering at said sale to pay the required sum for the least quantity of tract shall be considered the purchaser of such quantity."); *see also* § 140.340 (requiring the payment the "full sum of the purchase money named in the certificate of purchase ..." for redemption by owner or occupant.) The delinquent taxes, interest and charges provide a floor price or starting point for the sale, Mo.Rev.Stat. § 140.190, and presumably, prospective purchasers may bid far in excess of the presumed fair market value of any tract. In any event, the two (2) year redemption period following the sale allows an interested party to redeem the property if the fair market value is not realized.

The Court is sensitive to the fact that most, if not all, forced tax sales yield a purchase price much lower than the "fair

market value" of the property. The Supreme Court also recognized this fact in the mortgage foreclosure sale context, yet it did not control their analysis. *BFP,* 511 U.S. 531 at ——, 114 S.Ct. 1757 at 1762. Similarly, the consideration received at a tax sale should not control the analysis in this case.

### CONCLUSION

For these reasons, the debtor's motion for summary judgement is **DENIED** and judgement shall be entered for the **DEFENDANT.**

---

**6.** "Residential property" is "all real property improved by a structure which is used or intended to be used for residential living by human occupants and which contains not more than four dwelling units or which contains single dwelling units owned as a condominium ..." Mo.Rev. Stat. § 137.016.1(1).