**In re Richard Morris JONES, Jr., Chapter 13 Debtor.**

**C & M INVESTMENTS, L.L.C. Movant,**

**v.**

**Richard Morris JONES, Jr., Robert E. Hyman, Trustee, Respondent.**

**Bankruptcy No. 97–30229–T.**

**Adversary No. 97–225–T.**

United States Bankruptcy Court, E.D. Virginia, Richmond Division.

April 11, 1997.

Neal O. Reid, The Bankruptcy Legal Clinic of Richmond, P.C., Richmond, VA, for C & M Investments, LLC.

Robert B. McEntee, Jr., McEntee & Associates, P.C., Richmond, VA, for Debtor.

Robert E. Hyman, Richmond, VA, Chapter 13 Trustee.

Suzanne E. Wade, Thompson, Smithers, Newman & Wade, Richmond, VA, for Signet Mortgage Corporation.

## AMENDED MEMORANDUM OPINION

DOUGLAS O. TICE, Jr., Bankruptcy Judge.

Hearing was held March 24, 1997, on various motions pending in this case, primarily the motion of C & M Investments, LLC, for relief from the stay and the debtor's motion, pursuant to 11 U.S.C. § 548(a)(2), to avoid his prepetition transfer of real property to C & M Investments, LLC.[1]

At the conclusion of the hearing the court ruled that C & M's motion would be granted and the debtor's motion denied. This opinion supplements the court's bench ruling.

### Facts

In 1987 debtor purchased residential real property located in Henrico County, Virginia. The purchase was financed by a deed of trust loan from Signet Mortgage Corporation, secured by the realty.

In 1996 debtor was delinquent on the Signet loan, and Signet scheduled debtor's property for foreclosure on June 1, 1996.

Phyllis Milton, a "foreclosure and credit consultant," saw Signet's published foreclosure notice and contacted debtor to offer her services. As a result of this contact, Milton introduced debtor to Ivan Morton, a principal of C & M Investments, LLC.

Morton offered to lend debtor a sum sufficient to allow debtor to pay his loan arrearage to Signet. C & M and debtor executed a loan agreement dated May 29, 1996. The agreement provided for C & M to lend debtor approximately $3,200.00, which was to be repaid in the fixed amount of $5,000.00 (no interest provision) within three months. The agreement provided that debtor was to convey his realty to C & M; when debtor repaid the loan, C & M was to reconvey the realty to debtor. Upon debtor's default in payment, he was to be allowed to remain in the property for three months, after which C & M was to have possession and "full ownership right."

Due to further increases in the delinquency amount due Signet, C & M ultimately loaned debtor $4,175.47, which it paid directly to Signet.

As required by the loan agreement, debtor delivered to C & M a deed of debtor's realty. The deed, dated May 29, 1996, was prepared by C & M. In form, it was an absolute conveyance and contained no reference to the loan transaction.

When the three months expired debtor was unable to pay C & M the $5,000.00 as he had agreed. In addition, debtor had become delinquent again on the Signet deed of trust loan.

When debtor did not pay the $5,000.00, C & M recorded debtor's deed to it on August 29, 1996, and in November 1996 brought an unlawful detainer action in Henrico County General District Court to gain possession of debtor's realty pursuant to the deed. The summons which initiated this suit stated that it was based upon unpaid rent for June through August 1996 and requested possession of the property. Following a trial on the summons at which debtor appeared and contested the relief sought by C & M the general district court granted to C & M a judgment of possession and rent in the amount of $2,500.00.

---

1. The parties have agreed to have the § 548 issue heard on motion rather than by debtor filing an adversary proceeding. Debtor's motion actually was brought under 11 U.S.C. § 547(b)(1). However, at hearing his counsel, without objection, presented the case as one under § 548(a)(2).

Debtor's residential real property which is the subject of this contested matter had a fair market value of $63,400.00 on May 29, 1996, and on August 29, 1996. The balance due on the Signet deed of trust loan is approximately $46,200.00. In May 1996, when C & M made its loan to debtor, the principal balance of the Signet deed of trust was approximately $42,500.00; the same approximate balance was due on August 29, 1996.

At the time of the loan transaction and on August 29, 1996, debtor owed the following unsecured credit card debts (approximate):

| Chase Manhattan Bank | $18,000.00 |
|---|---|
| Household Credit Service | 4,400.00 |
| TOTAL | $22,400.00 |

The Household Credit Service debt in the amount of $4,400.00 was also the subject of a docketed judgment lien against debtor's realty at the time of the loan transaction and the recording of the deed.

At the time of the loan transaction and the recording of the deed, the value of debtor's assets, exclusive of his residence, did not exceed $5,320.00.

C & M incurred costs of $289.00 in recording the deed and will incur a six percent real estate commission upon sale of the realty.

Debtor filed the chapter 13 bankruptcy petition in this case on January 10, 1997.

*Conclusions of Law*

RES JUDICATA

The first issue is whether under the doctrines of res judicata or collateral estoppel the unappealed judgment order of the Henrico general district court precludes the debtor's motion to set aside his deed to C & M Investments under Bankruptcy Code § 548(a)(2).

Debtor testified that he appeared at the trial in general district court and argued that his transaction with C & M had been a secured loan and not an absolute transfer of realty; however, the general district judge gave no consideration to the parties' loan agreement, treated the deed as an absolute

transfer and decided the case in C & M's favor; the court granted to C & M a judgment of possession along with rent in the amount of $2,500.00.[2]

It appears to this court that under common law principles the parties' transaction was a secured loan rather than an absolute transfer of realty and should have been treated as a mortgage under Virginia law. *See* 13A *Michie's Jurisprudence* Mortgages and Deeds of Trust §§ 9–11 (1991). Nevertheless, it seems from debtor's testimony that the general district court did not give consideration to this view and instead granted possession of the property to C & M. Debtor did not appeal the judgment, and it now stands as final.

The doctrine of res judicata bars relitigation in a second suit involving the same parties based on the same cause of action if the court in the first suit issued a judgment on the merits. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649 n. 5, 58 L.Ed.2d 552 (1979); *Colwell v. Lucas (In re Lucas)*, 186 B.R. 67, 69 (Bankr.E.D.Va.1995). A separate though similar doctrine, collateral estoppel (also known as issue preclusion), applies where the second action between the same parties is upon a different cause of action. *See* 50 C.J.S. *Judgments* § 706, at 163–64 n.92 (1947).

Under collateral estoppel, the prior judgment "precludes relitigation of issues actually litigated and necessary to the outcome of the first action." *Shore*, 439 U.S. at 326, 99 S.Ct. at 649; *see also Combs v. Richardson*, 838 F.2d 112, 114 (4th Cir.1988).

Thus, the difference between res judicata and collateral estoppel is that res judicata forecloses all issues that *could* have been litigated previously, while "collateral estoppel treats as final only those questions actually and necessarily decided in a prior suit." *Brown v. Felsen*, 442 U.S. 127, 139 n. 10, 99 S.Ct. 2205, 2213 n. 10, 60 L.Ed.2d 767 (1979).

The party asserting res judicata or collateral estoppel has the burden of proving

---

**2.** The record here does not reveal why C & M sought only a $2,500.00 monetary judgment when the repayment amount was $5,000.00.

all of the requisites of its application. *Rountrey v. Lee (In re Lee),* 90 B.R. 202, 205 (Bankr.E.D.Va.1988). The only evidence submitted by C & M to support its assertion of the res judicata effect of the state court judgment against debtor is a copy of the filed unlawful detainer summons, which also reflects the entry of judgment of possession of the premises and $2,500.00 in rent. Other evidence of the proceedings in the general district court, which is not a court of record, was a document submitted to the court by the debtor, entitled "Bill of Particulars and Grounds For Defense" along with debtor's testimony at the hearing before this court.

Although the evidence of what happened in the state court is thin indeed, this court is satisfied that the judgment awarding possession and a monetary award to C & M is res judicata and precludes the debtor from raising in this court state law issues related to these particular findings.

■ However, C & M argues further that under res judicata or collateral estoppel the state judgment also precludes debtor's motion to avoid the transfer under Bankruptcy Code § 548(a)(2). I find that this argument must be rejected, based in part upon the rationale of the Supreme Court's decision in *Felsen,* where the court held that prebankruptcy state court judgments are not to be given res judicata effect in ensuing bankruptcy dischargeability litigation. *Felsen,* 442 U.S. at 128, 99 S.Ct. at 2207. It is implicit in the opinion that the Supreme Court considered bankruptcy discharge litigation as involving a different cause of action from a state court lawsuit to reduce a claim to judgment. *Felsen,* 442 U.S. at 134–35, 99 S.Ct. at 2211.

Similarly, the avoidance of a transfer under § 548(a)(2) is a different cause of action from the issues raised by C & M's suit for possession in state court. That suit merely affirmed debtor's transfer of the property. It cannot be argued here that debtor could or should have raised § 548, a bankruptcy remedy, as a defense in that case. Since § 548 was not available, it cannot here be a basis to assert res judicata.[3]

Nor does collateral estoppel apply to the issues raised by debtor's § 548 motion. These issues concern (1) the reasonably equivalent value of debtor's residence and (2) whether the transfer rendered debtor insolvent. 11 U.S.C. § 548(a)(2). Neither issue was necessary or appropriate to the general district court's judgment against debtor, and no evidence suggests they were raised. *In re Lucas,* 186 B.R. at 69.

SECTION 548(a)(2)

As applicable to the facts here, § 548(a)(2) provides

(a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

. . .

(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

. . .

■ Debtor bears the burden of proof to establish that on the date of the transfer he received less than the "reasonably equivalent value" for his realty and that the conveyance of the property rendered him insolvent.[4] *Cooper v. Ashley Communications, Inc. (In re Morris Communications NC, Inc.),* 914 F.2d 458, 466 (4th Cir.1990).

---

**3.** A comparable result is found in a recent ruling by Judge Adams of this district where in a dischargeability proceeding under § 523(a)(2) he rejected a debtor's assertion of a res judicata defense based upon prepetition lawsuit by the plaintiff. Debtor argued that the plaintiff's failure to include allegations of fraud in the state court barred a § 523(a)(2) action based upon fraud. *See Smith v. Howard (In re Howard),* Case No. 96–25025, APN 96–2184 (Bankr.E.D.Va. March 19, 1997).

**4.** It is unquestioned that the debtor in a chapter 13 case may bring a proceeding under § 548(a). *See Bundles v. Baker (In re Bundles),* 856 F.2d 815 (7th Cir.1988). If the transfer is avoided, C & M will retain a lien or interest in the property to the extent C & M "gave value to the debtor" in the exchange. 11 U.S.C. § 548(c). This lien or

The court has previously found as fact that at the time of the transfer and as a result of debtor's conveyance of his realty to C & M, debtor's liabilities exceeded his assets. He therefore "became insolvent as a result of such transfer...." 11 U.S.C. § 548(a)(2)(B)(i).

■ The more difficult issue remains, whether debtor "received less than a reasonably equivalent value in exchange for" the conveyance to C & M. 11 U.S.C. § 548(a)(2)(A). The value must be determined for the date of the transfer, here August 29, 1996.[5] *In re Morris Communications NC, Inc.,* 914 F.2d at 466.

Debtor's residence had a fair market value on the date of transfer of $63,400.00. The property was encumbered by Signet Mortgage Corporation's first deed of trust with a principal balance of $42,500.00 and a recorded judgment lien in the amount of $4,400.00. Thus debtor's apparent equity in the property was $16,500.00 (fair market value reduced by deed of trust and judgment lien).

C & M loaned debtor $4,175.47; the amount of the loan was based upon the amount necessary to cure the Signet delinquency and was unrelated to the value of the realty. In support of the position that it paid a reasonably equivalent value for debtor's property, C & M argues that it should also be given credit for additional charges C & M must bear as a result of the transfer. These include costs of deed recording, realtor's commission when C & M sells the property, seller's mortgage points, holding time and renovations for sale.

I agree with C & M's position on costs to the extent that C & M should be credited the cost of recording its deed and a reasonable realtor's commission upon its sale of the property. (There is insufficient evidence to support the other charges asserted by C & M.) The recording fees and realtor's commission total approximately $4,100.00 and were reasonably foreseeable if C & M was required to enforce its rights against the property.

In summary, the court's findings reveal the following:

| Fair Market Value of Debtor's Property | $63,400.00 |
|---|---|
| Amounts Credited to Purchaser: | |
| Signet Deed of Trust | $42,500.00 |
| Judgment Lien | 4,400.00 |
| Loan Amount | 4,175.00 |
| Other Costs Allowed | 4,100.00 |
| Total Credits: | $55,175.00 |

C & M thus acquired the property for an effective expenditure of 87 percent of fair market value. In effect then, this is what debtor received. Was it reasonably equivalent to the property's value?

In the Fourth Circuit, the standard for determination of valuation under § 548(a)(2) rests upon a case by case

> analysis of all the circumstances surrounding the suspect transfer to determine whether a fair economic exchange occurred.

. . .

> Factors to be considered include the good faith of the transferee, the relative difference in the amount paid compared to the fair market value, and the percentage the amount paid is of the fair market value.

*Cooper v. Ashley Communications, Inc. (In re Morris Communications NC, Inc.),* 75 B.R. 619, 628 (Bankr.W.D.N.C.1987), *rev'd on other grounds,* 914 F.2d 458 (4th Cir.1990); *In re Morris Communications NC, Inc.,* 914 F.2d at 467.

Another factor is "whether the sale was an arm's length transaction between a willing buyer and a willing seller." *Id.*

The Supreme Court has recently addressed the question of reasonably equivalent value under § 548 in the context of a prepetition mortgage foreclosure sale of a debtor's residential real property. In *BFP v. Resolu-*

---

interest would have to be provided for by debtor's chapter 13 plan.

5. For purposes of the court's analysis, the transfer took place on the date C & M recorded debtor's deed since this was the date under Virginia law that the conveyance became effective as to bona fide purchasers. Va.Code § 55–96; *see Gennet v. Docktor (In re Levy),* 185 B.R. 378, 382

(Bankr.S.D.Fla.1995). However, under the facts found by the court, the property value and indebtedness were approximately the same on May 29, 1996, when the debtor delivered the deed to C & M. Thus it does not matter to the outcome of this case whether the transfer took place on the date of recording or the date of delivery.

*tion Trust Corp.,* 511 U.S. 531, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994), the Court held that a noncollusive foreclosure sale under state law conclusively fixes the reasonably equivalent value of property for purposes of § 548. *Id.* at 536–38, 114 S.Ct. at 1761; 5 *Collier on Bankruptcy* ¶ 548.05[1][b] (Lawrence P. King et al. eds., 15th ed. rev.1996).

The Supreme Court's *BFP* opinion makes clear that where there is a foreclosure or forced sale of property, reasonably equivalent value is not fair market value.[6] *BFP,* 511 U.S. at 536–40, 114 S.Ct. at 1761–62. However, the Court observes that "outside the foreclosure context," reasonably equivalent value will "ordinarily [have] a meaning similar to fair market value." *Id.* at 544–45, 114 S.Ct. at 1765.

The case before this court is rather a hybrid between a forced sale of debtor's real property and an arm's length sale. Although I do not find the facts here controlled by the Supreme Court's holding in *BFP,* in one sense there was a prepetition "foreclosure" in that C & M went to state court and was awarded possession of the property.[7] The state court's judgment of possession was tantamount to an affirmance of C & M's title under the deed it had received from debtor. From this standpoint the court cannot conclude that debtor received less than a reasonably equivalent value.

On the other hand, the court can view the transaction as a sale or transfer by debtor to C & M for the consideration previously found by the court. In this light, debtor effectively received approximately 87 percent of the value of his property. Thus, in what the court considers an arm's length transaction, the debtor received a high percentage of his property's value and under less than ideal

circumstances where he was confronted with foreclosure and loss of the property.[8] That the loss was imminent is supported by his continuing inability to pay the first deed of trust which resulted in this bankruptcy filing.

Under all the circumstances, this court would be hard pressed to find that debtor received less than reasonably equivalent value for the transfer of his realty to C & M. In summary, I conclude that debtor has not carried his burden of proof to set aside the transfer under § 548(a)(2).

An order has previously been entered.

---

**6.** In a footnote the Supreme Court stated:
Our discussion assumes that the phrase "reasonably equivalent" means "approximately equivalent" or "roughly equivalent." . . .
*BFP,* 511 U.S. at 538 n. 4, 114 S.Ct. at 1762 n. 4.

**7.** Recent bankruptcy opinions have extended the *BFP* holding. *See Burke v. McCanna (In re Czel),* 202 B.R. 778 (Bankr.D.N.M.1996) (ruling that the presumption of reasonably equivalent value applies to a prepetition forfeiture of a debtor's interest under a land sale contract); *but see Dunbar v. Johnson (In re Grady),* 202 B.R. 120 (Bankr.N.D.Iowa 1996). In *Russell–Polk v. Bradley (In re Russell–Polk),* 200 B.R. 218

(Bankr.E.D.Mo.1996), the court held that the *BFP* rationale applied to a properly conducted real property tax sale.

**8.** Debtor has raised no issue concerning the nature of his underlying transaction with C & M. Although the court has some concerns about the transaction, I find it does not alter my ultimate conclusion on debtor's motion. The court is satisfied that the debtor, a certified public accountant, understood the full nature of the transaction and that he took the loan willingly; he simply gambled upon his ability to repay the loan and recover the property.