### In re SAMANIEGO, Frank B. and Samaniego, Johnnie H., husband and wife, Debtors.

**Bankruptcy No. 97–06944–R33.**

United States Bankruptcy Court, E.D. Washington.

Aug. 13, 1998.

Patrick F. Hussey, Velikanje, Moore & Shore, Inc. P.S., Yakima, WA, for Apol & Biehl dba AB Investments.

K. Denny Colvin, Yakima, WA, for Debtors.

## MEMORANDUM OPINION

JOHN A. ROSSMEISSL, Chief Judge.

### I.

### *PROCEDURAL POSTURE AND JURISDICTIONAL STATEMENT*

The Debtors filed a case under Chapter 13 of the Bankruptcy Code, December 24, 1997. Thomas Biehl and Harold Apol, dba AB Investments filed a motion to annul the automatic stay to validate their post petition recording of four tax deeds based on pre petition purchases of debtor's real property at foreclosure sales. The debtors objected to the motion and moved to avoid the transfer of property. This is a core proceeding under 28 U.S.C. 157(b)(2)(G) and (H) and the court has jurisdiction to hear and determine these issues under Title 11 and United States Eastern District Court LR 83.5.

### II.

### *FACTS*

The debtors, Frank and Johnnie Samaniego, husband and wife, are in their early sixties and reside in Yakima County, Washington. Spanish is their first language. Mrs. Samaniego has difficulty reading English and has relied on Mr. Samaniego to handle their business affairs. Mr. Samaniego has operated his own business and has been able to manage his own affairs in the past. The debtors have owned a number of parcels of real estate.

Tax collection proceedings were instituted by the Yakima County Treasurer for collec-

tion of past due real estate taxes on the debtors real estate. The debtors were notified on June 4, 1997 that there were outstanding real property taxes past due for three years or more on six parcels of their real estate. On July 2, 1997, a Certificate of Delinquency was filed with the Yakima County Clerk listing taxes three years past due on debtors' six parcels.

On September 19, 1997, the Yakima County Treasurer caused to be filed an "Amended General Certificate of Delinquency" issued to Yakima County, Washington. Once again the six parcels were listed as being delinquent in payment of taxes for those years and subject to foreclosure sale. Copies of this Amended Certificate of Delinquency were sent to the debtors return receipt requested on September 23, 1997, and receipted for September 24, 1997 by Linda Rodriques. The debtors do not dispute receiving this notice. Notice of these tax foreclosure proceedings was duly published.

On December 2, 1997, the Superior Court entered judgment in these tax foreclosure proceedings and directed sale of debtor's real estate on December 12, 1997.

On December 5, 1997, Mr. Samaniego visited the Yakima County Treasurer's office. He redeemed one parcel from the upcoming tax sale and inquired as to an extension for payment as to the other five parcels. At the Treasurer's office, Mr. Samaniego was advised of his rights for a possible deferral of taxes on his residence, what information he needed to provide in claiming a senior exemption, and that he should consider filing bankruptcy. Mr. Samaniego was given a list of attorneys specializing in bankruptcy in the area and in response to his inquiry was told which of the bankruptcy lawyers listed were closest to the courthouse.

Mr. Samaniego then went to the office of K. Denny Colvin and consulted him about a possible bankruptcy. Mr. Colvin advised the debtor as to the amount of retainer required and the information that must be provided prior to the December 12, 1997, day of sale.

On December 8, 1997, Mr. Samaniego left with Mr. Colvin's receptionist the required retainer but did not leave the list of creditors nor any of the signature pages. Mr. Samaniego mistakenly believed that all he had to do to stop the foreclosure sale was to pay the retainer requested.

Mr. Samaniego suffers from a heart condition which caused him to close his business in the mid 1990's. This condition required exploratory surgery which was scheduled in Seattle, Washington December 8th & 9th, 1997. After dropping the retainer off, Mr. and Mrs. Samaniego went to Seattle where Mr. Samaniego was hospitalized and the surgery performed. The debtors remained in Seattle recuperating from the medical procedure and visiting a seriously ill son. They returned to the Yakima area on December 16th or 17th, after the date of the scheduled tax sale.

The tax foreclosure sale had proceeded as scheduled in the debtors' absence. At this tax sale, a partnership composed of Harold Apol and Thomas G. Biehl, (hereinafter referred to as Apol & Biehl) purchased four of the defendant's five parcels. The tax sale was competitive with active bidding on the four parcels. Of the four parcels purchased, two were purchased for a price in excess of the assessed value of the property and two for less than the assessed value. The actual fair market value of these parcels is contested by the parties.

On December 19, 1997, the Yakima County Treasurer executed tax deeds to the purchasers at the tax sales.

At some time around December 19, 1997, Mr. Samaniego was contacted by Thomas Biehl, who advised Samaniego of the sale. Mr. Samaniego in turn gave Mr. Biehl the name of Mr. Colvin, the debtors' bankruptcy attorney. Mr. Biehl attempted to contact Mr. Colvin but was unsuccessful. The debtors filed their Chapter 13 December 24, 1997. Mr. Colvin ultimately advised Mr. Biehl of the debtors' bankruptcy by letter dated January 12, 1998. Until that time the purchasers had no notice of the pending bankruptcy.

Notice of bankruptcy filing was not recorded with the Yakima County Auditor nor was notice of the actual filing given to Apol & Biehl prior to the debtors' attorney's letter of January 12, 1998. Mr. Colvin did however

mail a notice of stay to the Yakima County Treasurer, c/o Ron Zirkle, a deputy prosecuting attorney on December 24, 1997.

On December 26, 1997, the Treasurer recorded the four tax sale deeds of the debtors' property to Apol & Biehl with the Yakima County Auditor.

After hearing of the bankruptcy, Apol and Biehl filed an application to annul the automatic stay retroactively to validate the post petition recording of the tax deeds. The debtors objected to this requested relief and filed a motion to avoid the transfers to Apol and Biehl. These issues were combined for hearing and the court set the matter for summary judgment on both parties' requests for relief.

## III.

### DISCUSSION

The debtors raise a number of issues in support of their position based on both state law and bankruptcy law. The interrelation of these two statutory schemes is somewhat complicated. The court will first analyze the debtors' rights under the state statute to determine what remedies they might have under state law. The court will then determine whether the debtors have additional grounds under the Bankruptcy Code for setting aside the transfers incident to the tax sales. Last, the court will determine whether the purchaser Apol and Biehl are entitled to a retroactive annulment of the automatic stay in this case.

### A. *State Tax Foreclosure Issues.*

The State of Washington has established procedures for collection of past due real estate taxes. This procedure requires that the county treasurer issue a certificate of delinquency if taxes on real estate are three years delinquent. This certificate of delinquency is filed with the county clerk and notice given by publication and mailing by certified mail to the owner and all persons having a recorded interest in the property. R.C.W. 84.64.050.

The state court is required to examine the application for judgment foreclosing tax lien, hear and determine any defenses offered in a summary manner and enter judgment. If that judgment is that taxes are due, this is a judgment against the specific land, and the court shall direct the clerk to enter an order of sale. This order of sale is delivered to the treasurer. The treasurer on receipt of this order and judgment shall proceed to sell the property to the highest and best bidder for cash. Notice of the sale is given by posting notice in three public places in the county, one of which is the office of the treasurer. At such sale the minimum bid is the total amount of taxes, interest, penalties and costs. If the amount bid at the sale is in excess of the minimum bid, the excess is to be refunded, upon application therefore, to the record owner of the property. The treasurer is to execute a tax deed to the purchaser and this deed is to be recorded with the auditor. This vests title to the property in the grantee of the deed. R.C.W. 84.64.080. The treasurer's deed is prima facie evidence of the regularity of the foreclosure proceeding. The judgment entered estops presentation of defenses and is conclusive evidence of regularity and validity and precludes collateral attack. R.C.W. 84.64.180.

Appeal may be taken from this judgment within thirty days of entry. The appellant must deposit a sum equal to the taxes, interest, penalties and costs with the clerk of the court conditioned upon effective prosecution of the appeal and payment of the judgment. This deposit must be made within thirty days of the entry of the judgment. R.C.W. 84.64.120.

This is the statutory scheme which the Yakima County Treasurer followed in foreclosing on the debtors' five parcels of real estate. Although in some circumstances a tax foreclosure proceeding may be set aside on reasonable notice and due process grounds, *Mennonite Board of Missions v. Adams,* 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983), those grounds are not available to these debtors. The debtors had actual and timely notice of the impending sale sufficient to allow them to protect their rights.

The debtors raise a number of arguments based on the provisions of state law.

■ First, the debtors assert that their property was subject to a property tax exemption and therefore could not be legally sold at a tax foreclosure sale. R.C.W. 84.36.381 allows for taxpayers to claim an exemption from property taxes imposed on their residence if certain conditions are met. Among these conditions are that the taxpayer is sixty-one years old or older or retired because of physical disability. R.C.W. 84.36.381(3). Among other qualifications included in this section is a combined disposable income requirement. If taxpayers wish to qualify for an exemption they must file a written claim of exemption accompanied by documentation verifying the taxpayer's income. R.C.W. 84.36.385; R.C.W. 84.36.387. The debtors in this case did not file the required claim of exemption prior to the sale.[1] The evidence before the court is insufficient to establish whether these debtors were entitled to a tax exemption on their residence. In any event it is clear in this statutory scheme that such an exemption is not an automatic one and must be claimed by filing. The debtors failed to do so before the tax sale was conducted. They can not do so now. The debtors argument that they were protected from the tax sale because of the tax exemption provisions of the state law are ill founded.

■ Second, the debtors assert that they were eligible for a deferral of their taxes and thus protected from the tax sale. R.C.W. 84.64.050 prohibits the treasurer from selling property which is eligible for deferral of taxes under R.C.W. 84.38 but requires the owner to file a declaration pursuant to R.C.W. 84.38.040. Among the qualifications for claiming a deferral contained in R.C.W. 84.38.030 are income limits, insurance for fire and casualty insurance on the property, and meeting the requirements for exemption for a residence under R.C.W. 84.36.381. Although the debtors were advised about filing for a deferment they did not do so. The

evidence is not clear that if they had filed that they would have qualified for a deferment. The tax foreclosure sale was conducted as scheduled and the debtors cannot now assert a possible claim of deferment to defeat the sale.

■ Third, the debtors assert that they retain redemption rights in the property foreclosed. R.C.W. 84.64.070 provides that real property ... "may be redeemed at any time before the close of business the day before the day of the sale, by payment".... Debtors redeemed one of the six parcels originally certified as delinquent, but did not redeem the remaining five. Pursuant to the statute the debtors redemption rights are gone.[2] The debtors maintain however that under another provision of this same section they retain redemption rights. The language they rely on provides "If the real property of ... any person adjudicated to be legally incompetent, be sold for payment of taxes, the same may be redeemed at any time within three years after the date of sale upon the terms specified in this section,...." The problem with this argument is that neither of the debtors have been adjudicated incompetent. The evidence submitted regarding Mr. Samaniego's health problems, the mishandling of the tax sale foreclosure and the voluntary granting of his son his power of attorney do not rise to the level required for adjudicating him legally incompetent, even if this court had jurisdiction to make such an adjudication, which it does not.

■ Finally the debtors argue that at the time of filing their bankruptcy case the tax judgment was appealable. The debtors are correct. The tax judgment was entered December 2, 1997, and their bankruptcy case filed December 24, 1997. Pursuant to R.C.W. 84.64.120, appellate review of such a judgment must be sought within thirty days of entry of the judgment. The appeal time

---

1. Benacio Garcia Jr., in his April 23, 1998 sworn statement filed herein, indicated that at that time he was filing a claim for Senior Exemption. The file contains no evidence that this was accomplished.

2. Prior to the adoption of this current language, the statute provided certificates of delinquency

"may be redeemed at any time before the issuance of tax deed, ..." RRS § 11280. This provision was amended by Laws 1963, Ch. 88 § 2. See also *Stockand et ux. v. Hall, et al.*, 54 Wash. 106, 109, 102 P. 1037, 1038 (1909); *State ex rel. Race et al. v. Cranney County Treasurer, et al.*, 30 Wash. 594, 604, 1 P. 50, 53 (1902).

had not lapsed as of the time of filing the bankruptcy case. The Bankruptcy Code Section 11 U.S.C. § 108(b) provides for a sixty day extension of time for filing a notice of appeal from the date of the order for relief, i.e. the date of filing. 11 U.S.C. § 301. The extended date for filing a notice of appeal pursuant to these provisions has passed with no notice of appeal having been filed. The debtors can not now rely on an argument that the judgment was not final when they filed their bankruptcy case.

In summary, although the debtors have argued that they retain viable rights under state law in the foreclosed properties they have not prevailed on those grounds. The court must now consider whether that result is different as a result of the operation of the Bankruptcy Code.

### B. *The Bankruptcy Law Issues.*

Superimposed over the state statutory rules governing tax foreclosures is the complex matrix of provisions of the Bankruptcy Code. The parties have identified a number of Bankruptcy Code provisions that impact the decision in this case. It is necessary to analyze each of these provisions separately.

#### 1. *Debtors' Standing to Enforce Bankruptcy Rights.*

■ Debtors have filed a motion to avoid the transfers of their real property pursuant to 11 U.S.C. § 544, 11 U.S.C. § 548, and 11 U.S.C. § 549. Although such relief customarily must be sought in an adversary proceeding pursuant to Bankruptcy Rule 7001, it may be sought by motion when it relates to exempt property. FRBP Rule 4003(d). Only the debtors' residence is claimed exempt. With the exception of actions to avoid transfers of exempt property, avoidance actions are customarily the prerogative of the Chapter 13 Trustee and can be prosecuted by the debtors only after the Trustee's failure or refusal to act, after notice and hearing

and obtaining court authorization. *In re Elam,* 194 B.R. 412, (Bankr.E.D.Tex.1996); *In re Young,* 156 B.R. 282 (Bankr.Idaho 1993). The debtors have not followed these procedures.

■ Here, however, the motion to avoid was filed in response to Apol and Biehl's motion to annul the stay. The viability of the various avoidance actions go to the merits of the stay annulment litigation and have to be resolved in the course of consideration of the annulment request. The parties to this litigation were aware of these issues, but chose not to raise them in either their briefs or their arguments, realizing perhaps that the raising of these issues would simply delay the final resolution while the debtors sought formal approval of their actions by the Trustee and the court. The Trustee has been aware of this matter from the time of filing the avoidance motion and has acquiesced in its prosecution. Although the court does not condone this procedure, it would be inappropriate, given the actions of the parties, to make these issues dispositive of these disputes. There is nothing which would suggest these issues should not, could not, or were not adequately prosecuted by the debtors. This is particularly so in that even if the Trustee refused to prosecute the matter the debtors could do so on their own pursuant to the provisions of 11 U.S.C. § 522(h) as to their residence which they claim exempt.

The court will consider the avoidance issues raised by the debtors as raised for the benefit of the estate and on behalf of the Trustee and as defenses to the annulment request.

#### 2. *11 USC § 544—the Strong Arm Provision.*

■ The trustee has, as of commencement of the case, the rights of certain hypothetical parties, including that of a bona fide purchaser of real property. 11 U.S.C. § 544(a)(3).[3]

---

**3.** 11 U.S.C. § 544 provides in pertinent part:
    (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

    . . .
    (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the

This right can in appropriate cases be used to defeat competing claims in the debtors real estate which are not perfected as of the time of filing of the bankruptcy case. The debtors argue that using this provision they can defeat the interest of Apol and Biehl in that at the time of filing, December 24, 1997, the Treasurer's deed to Apol and Biehl had not yet been recorded in the real estate records of the Yakima County Auditor. Accordingly, because the case was filed prior to recording of the Treasurer's deed on December 26, 1997, the debtors argue they win the race to the court house and thus prevail over the purchasers.

Apol and Biehl respond that the state of the title of the subject real estate put any purchaser on inquiry notice of their rights in the property. Therefore, they argue a bona fide purchaser would only take subject to Apol and Biehl's interest in the real estate.

The issue here turns on whether "under applicable law", i.e. Washington real estate law, the Trustee's rights as a bona fide purchaser are superior to these purchasers at a tax foreclosure sale. The Washington state tax foreclosure statutes provide for filing of certificates of delinquency with the county clerk. "Each certificate shall have the same force and effect as a lis pendens required under chapter 4.28 R.C.W." R.C.W. 84.64.050. Pursuant to R.C.W. 4.28.320 lis pendens are to be filed with the county auditor but R.C.W. 84.64.050 provides that filing with the clerk will have the same force and effect. R.C.W. 4.28.320 goes on to provide:

> From the time of the filing only shall the pendency of the action *be constructive notice to a purchaser* or encumbrancer of the property affected thereby, and every person whose conveyance or encumbrance is subsequently executed or subsequently recorded shall be deemed a subsequent purchaser or encumbrancer, and shall be bound by all proceedings taken after the filing of such notice to the same extent as if he were a party to the action. For the purpose of this section an action shall be deemed to be pending from the time of filing such notice ... (emphasis added).

time of the commencement of the case, whether or not such a purchaser exists.

The Ninth Circuit in *In re Professional Investment Properties of America,* 955 F.2d 623, 629 (9th Cir.1991) discussed the impact of a lis pendens on claims of subsequent purchasers in a § 544 context as follows:

> The filing of a lis pendens in connection with a lawsuit against the record title holder of real property gives constructive notice of an action to subsequent purchasers from the record title holder. *In re Gurs,* 27 B.R. 163, 165 (9th Cir. BAP 1983).

Given the constructive notice provided by the filing of the certificate of delinquency, it is clear that the Trustee relying on his powers as a hypothetical bona fide purchaser would take with notice of the rights of the purchasers at the tax sale and subject thereto.

### 3. *11 USC § 548—Fraudulent Transfer.*

The trustee may avoid a transfer of debtors property made within one year of filing if the debtors were insolvent at the date of transfer and the debtors received less than a reasonable equivalent value in exchange for the transfer. 11 U.S.C. § 548(a)(2). The debtors assert that the four parcels of property sold to Apol and Biehl at the tax foreclosure sale were sold for less than reasonable equivalent value and thus are subject to being avoided.

The debtors contend that their four parcels worth a combined fair market value of $102,319 and with a combined assessed value of $76,800 were sold at tax sale to Apol and Biehl for $40,750 to pay taxes due of $7,596. In addition to the taxes the property sold was also encumbered to Household Finance Corporation for approximately $32,000. These assertions are based on the affidavit of Benacio Garcia Jr., the son of Mrs. Samaniego, who has some education and experience in the real estate field and who owns numerous rental properties in the pertinent neighborhood.

The purchasers contest the debtors evidence regarding valuation of the property. Mr. Biehl, an experienced real estate broker in the area, valued the purchase price of the two vacant parcels at more than the fair

. . .

market value. He valued the one rental property at somewhat less than the assessed value and the debtors residence at roughly its assessed value.

Thus the evidence on value of the parcels sold is contested and if the determination of this matter is to turn on valuation a trial would have to be conducted on these issues.

Apol and Biehl argue however that this contest on valuation is immaterial in the context of this case relying on the authority of *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994). They argue that as a matter of law the purchase price at a non collusive and regularly conducted tax sale constitutes reasonable equivalent value for purposes of 11 U.S.C. § 548.

The debtors counter that *BFP* is not good authority in this case in that *BFP* dealt with a deed of trust/mortgage foreclosure sale and not a tax sale. The debtors buttress this argument by reference to footnote 3 in the *BFP* opinion which states:

> We emphasize that our opinion today covers only mortgage foreclosures of real estate. The considerations bearing upon other foreclosures and forced sales (to satisfy tax liens, for example) may be different.

511 U.S. at 537, 114 S.Ct. 1757.

It is unclear to this court in what respect the Supreme Court felt that a regularly conducted non collusive tax sale might be treated differently than deed of trust/mortgage foreclosures. Certainly some tax collection sale procedures might be subject to challenge *Mennonite Board of Missions v. Adams*, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983) but this court's review of the county's tax collection procedure used in the case do not support such a challenge here. Tax foreclosure procedures vary from state to state. For example, under Illinois law a tax sale only creates a lien. *In re Shamblin*, 890 F.2d 123, 127 (9th Cir.1989). It is possible that the Supreme Court had such laws in mind, when it drafted its limiting footnote 3 in the *BFP* decision. Although there are different procedures to be followed at judicial foreclosures and deeds of trust sale, it is not

clear that the tax foreclosure procedures applicable in this case are so significantly different as to justify a different treatment of these sales under § 548 than the Supreme Court approved in *BFP* for a deed of trust/mortgage foreclosure.

The debtors here do not identify how the state's statutory scheme and procedures are inherently defective, or that the county's execution in the case was irregular in any way. The unrefuted evidence before the court is that there was active competitive bidding at the sale and the properties sold for significantly more than the tax debt on each parcel. The court determines the purchase prices paid for the parcels in question constituted their reasonable equivalent value within the meaning of 11 U.S.C. § 548. The prices paid were the product of a non collusive, regularly conducted statutory procedure. The court finds no reason why it should depart from the rule of *BFP* as it applies to these tax sales.

### 4. *11 USC § 362 Violation of the Automatic Stay.*

The debtors argue that the recording of the Treasurer's deeds were void because they were done in violation of the provisions of the automatic stay, 11 U.S.C. § 362. This statute prohibits parties from taking certain specified activities against the debtors and their property after the filing of a bankruptcy petition. A review of this section shows that at least three of its subsections which prohibits action might be applicable to this case.

Section 362(a)(1) stays the continuance of "judicial administrative or other actions" which were commenced before the filing of the case. The tax collection and foreclosure process which is the subject here would seem to be covered by this section. Delivery and recording of the Treasurer's deed is the final step in that statutory process. As such it is stayed.

Likewise § 362(a)(2) appears applicable in that it prohibits the enforcement against the debtors or the property of their estate of a pre filing judgment. Once again delivery and recording of the deeds is the final step in

the tax judgment foreclosure process and is stayed.

Finally, § 362(a)(3) stays "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate; ...". Bare legal title constitutes property of the estate. 11 U.S.C. § 541(d). Delivery and recording of the Treasurer's deeds are clearly acts to obtain possession of that bare legal title from the estate and establish control over it. This provision is the one most clearly applicable to the facts of this case.

The Ninth Circuit has ruled clearly and unambiguously that acts taken in violation of the automatic stay are void. *In re Schwartz*, 954 F.2d 569 (9th Cir.1992). Therefore, the delivery and recording of the Treasurer's deeds were void and of no force and effect.

### 5. *11 USC § 549 Post Petition Transfer.*

Apol and Biehl argue that even if these acts would normally be void as stay violations, they fall within the exception contained in 11 U.S.C. § 549(c).

The Ninth Circuit analyzed the interrelationship between § 362 and § 549 in the *Schwartz* case ruling "The law in this circuit is that violations of the automatic stay are void and that section 549 applies to transfers of property which are not voided by the stay." 954 F.2d at 574. Since the delivery and recording of the Treasurer's deeds were done in violation of the automatic stay, they are void and § 549 is therefore inapplicable. Even if § 549 was viewed as an exception to operation of the automatic stay, Apol and Biehl would not fall within this exception.

Section 549(c) provides:

The trustee may not avoid under subsection (a) of this section a transfer of real property to a good faith purchaser without knowledge of the commencement of the case and for present fair equivalent value unless a copy or notice of the petition was filed, where a transfer of such real property may be recorded to perfect such transfer, before such transfer is so perfected that a bona fide purchaser of such property, against whom applicable law permits such transfer to be perfected, could not

acquire an interest that is superior to the interest of such good faith purchaser. A good faith purchaser without knowledge of the commencement of the case and for less than present fair equivalent value has a lien on the property transferred to the extent of any present value given, unless a copy or notice of the petition was so filed before such transfer was so perfected.

This section provides an exception to the Trustee's power to avoid post petition transfers. The transfer in question here is the delivery and recording of the Treasurer's deeds post petition. Only bare legal title was transferred, the debtors equitable interest in the property having been transferred at the pre-petition tax sale. Thus the only transfer that can be the focus of § 549(c) was this delivery and recording of the Treasurer's deeds.

To qualify for the exception to this avoiding power, the transfer must be of real property. Bare legal title to real property was transferred. The court assumes that this constitutes real property within the terms of the subsection.

The transfer must be "to a good faith purchaser". Although Apol and Biehl are transferees, they are not purchasers in the strict sense of § 549(c). Clearly and unambiguously § 549 applies to post petition purchasers. *In re Schwartz*, 954 F.2d at 573–574. Here the purchases took place pre-petition at the tax sale. Whether the language of § 549 is applicable to pre filing purchasers is problematic.

One must be "a good faith purchaser without knowledge of the commencement of the case" to fall within the exception provided by § 549(c). This requirement makes no sense applied to pre-filing purchasers, because here there was no case in existence at the time of purchase.

Even more troubling is the requirement that the transfer be for "present fair equivalent value". Apol and Biehl did pay substantial purchase prices at the tax sales, twelve days prior to the filing of the bankruptcy and fourteen days prior to the recording of the deeds. Does the term "present" used in § 549(c) refer to the time of sale or to the

time of transfer? Use of "present" to refer back to the date of the sale for these purposes would require the adoption of a relationship back interpretation of § 549(c). There is no language in § 549 or anywhere in the Code which authorizes this relation back. In situations where such a relation back was contemplated, it was specifically provided by Code provisions, for example § 362(b)(3); § 546(b) and § 547(e)(2)(A). The Ninth Circuit has instructed § 549(c)'s protection of good faith purchasers is specific and narrow. *In re Schwartz*, 954 F.2d at 574. Interpreting the term "present" as relating to the time of delivery and recording rather than the time of sale is consistent with this instruction and the court adopts that time as the appropriate one for determining what value was given for the transfer.

If § 549 is to be applied to pre petition sales such as these, the statute is confusing. As we have seen from our previous discussion, these sales withstand an avoidance attack under § 548 as being made for "reasonable equivalent value."[4] Under the § 549(c) exemption the test is whether the transfers were made for "present fair equivalent value". These two standards are different, with the § 549(c) test the more strict of the two. *In re Shaw*, 157 B.R. 151 (9th Cir. BAP 1993).[5] This interpretive problem vanishes if § 549 is read as being inapplicable to pre petition sales.

Given these arguments, the court concludes that § 549 does not apply to pre filing sales which are unperfected at filing.

■■■ Even if § 549(c) does somehow apply to these sales, it is not clear Apol and Biehl gave any value at the time of delivery and recording of the deeds. The court will consider that they gave nominal value at the time of the transfer. What was the value of the bare legal title they received? The Ninth Circuit Bankruptcy Appellate Panel has ruled that the term "present fair equivalent value" used in § 549(c) "tolerates little deviation from fair market value". *In re Shaw*, 157 B.R. at 154; *But see In re T.F.*

*Stone Co., Inc.*, 72 F.3d 466 (5th Cir.1995) (equates "reasonable equivalent value" under § 548 with "present fair equivalent value" under § 549 and neither term with "fair market value"). What is the fair market value of bare legal title in property where the equitable ownership is elsewhere?

"Bare legal title may be of great value to the bankruptcy estate if it enables the Trustee to avoid the unperfected transfer of real property." *In re Stork*, 212 B.R. 970, 971–972, (Bankr.N.D.Cal.1997). This might be significant if the debtors had recorded notice of their bankruptcy prior to recording of the purchasers deed. The race statute provisions of § 549(c) and the Washington recording statute could give this bare legal title significant value. *In re Walker*, 861 F.2d 597 (9th Cir.1988); *In re Williams*, 124 B.R. 311, (Bankr.C.D.Cal.1991); *But see In re Engles*, 193 B.R. 23 (Bankr.S.D.Cal.1996). Here however the purchasers were first to record and that recording deprives the bare legal title of its value to the debtors.

Apol and Biehl gave only nominal value at the time of delivery and recording of the deeds. In exchange they received the market value of the property free of debtors' interest. If debtors had won the recording race, debtors would have retained the market value of the property, less Apol and Biehl's lien for the value given. However, here the market value exceeded the value given by Apol and Biehl at the time of delivery and recording; therefore Apol and Biehl did not give present fair equivalent value for the interest the debtors lost by the transfer. Apol and Biehl would thus not qualify for the protection of the exception provided by § 549(c).

In summary, the delivery and recording of the Treasurer's deeds were void because done in violation of the automatic stay. Section 549 is not applicable to transfers which are void. Even if § 549(c) is interpreted as an exception to the operation of the automatic stay it is narrowly construed and not applicable to pre petition sales. Even if it was

---

**4.** See discussion pages 161 through 163 herein.

**5.** The court's reasoning in *T.F. Stone Co. Inc.*, 72 F.3d 466 (5th Cir.1995) that these two clearly

different terms really mean the same thing is not convincing.

applicable, as an exception to the operation of § 362, Apol and Biehl would not qualify for the protection of § 549(c) because they did not give present fair equivalent value for the transfer at the time of delivery and recording. The value they gave was less than the value of the debtors' interest in the property transferred.

### 6. *Annulment of the Automatic Stay.*

Finally the court comes to the issue of whether the automatic stay should be annulled.

The court has analyzed the debtors' arguments concerning their rights to exemption, deferment, redemption and appeal under the Washington state tax foreclosure law and procedure and concluded that the debtors have no viable rights remaining under those laws and procedures.

The court has also analyzed the debtors' rights under the Bankruptcy Code and concluded that the tax sales and transfer incident thereto cannot be avoided under 11 U.S.C. § 544 or 11 U.S.C. § 548 and that 11 U.S.C. § 549 is not applicable to the facts of this case. The court has determined that the delivery and recording of the Treasurer's deeds were void as done in violation of the automatic stay. Apol and Biehl seek annulment of the stay thereby validating the previously recorded deeds.

The debtors hold bare legal title to the lots sold at the tax sale. They retain no interest in this property of benefit to themselves or their estate. In such instances where the purchasers hold equitable title and the debtors retain only bare legal title, cause exists to allow the equitable owner to obtain the legal title. *In re Engles,* 193 B.R. 23, 26 (Bankr. S.D.Cal.1996). The automatic stay will be annulled as to delivery and recording of the tax deeds.

### IV.

### CONCLUSION

The debtors lack viable issues under either state law or bankruptcy law which would allow them or their estate to benefit from the bare legal title they currently hold in the real property at issue. Therefore the purchasers should be granted the relief they seek annulling the stay and validating the delivery and recording of the deeds which unite the legal title with their existing equitable title.