In re Daniel W. WASHINGTON, Sr., Debtor.

Daniel W. Washington, Sr., Plaintiff,

v.

County of King William, Treasurer, Donald W. Kellum, Robert E. Hyman, Trustee, Defendants.

Bankruptcy No. 98–30981–T. Adversary No. 98–3058–T.

United States Bankruptcy Court, E.D. Virginia, Richmond Division.

Jan. 7, 1999.

Neal O. Reid, Richmond, VA.

L. McCauley Chenault, Mechanicsville, VA.

Bruce White, Richmond, VA.

Peter G. Glubiak, Aylett, VA.

Robert E. Hyman, Richmond, VA, Trustee.

### MEMORANDUM OPINION

DOUGLAS O. TICE, Jr., Bankruptcy Judge.

The debtor brought this adversary proceeding to set aside a fraudulent transfer pursuant to 11 U.S.C. § 548. The transfer in question was a delinquent real estate tax sale conducted by defendant King William County, Virginia. Although the foreclosure auction took place prior to debtor's filing bankruptcy, debtor's petition was filed before the sale was approved by the state court.

Two issues are raised: (1) Whether a judicial tax sale under Virginia law may be set aside as a fraudulent transfer, and (2) What is the effect of the state court's failure to approve the sale?

### Findings of Fact

Debtor Daniel W. Washington, Sr., filed a chapter 13 petition with this court on February 12, 1998, and listed as an asset of the bankruptcy estate real property located on Route 629, King William County, Virginia (the property). Washington was delinquent on his real estate taxes for the

property for the years 1981 through 1996. As a result, on February 5, 1998, Washington was liable to the King William County Treasurer in the amount of $6,325.00. Washington scheduled the entire amount in his chapter 13 petition, at Schedule E, and the chapter 13 plan proposes that the claim be fully satisfied by payments over 36 months.

Previously, the Circuit Court of King William County, pursuant to VA.CODE ANN. § 58.1–3965 *et seq.,* authorized the sale of the property by public auction in a decree dated December 17, 1997. On February 5, 1998, one week before the filing of Washington's chapter 13 petition, King William County held a public auction for the property. Defendant Donald W. Kellum entered a bid of $8,000.00 for the property, the last and highest bid. King William County accepted Kellum's bid, and Kellum tendered a deposit on the purchase price in the sum of $2,000.00. The Virginia circuit court had not entered an order confirming the sale prior to February 12, 1998, the date that Washington filed his chapter 13 petition and has declined to do so during the pendency of this bankruptcy case. Washington has never attempted to redeem the property pursuant to Virginia statute.

The subject realty has a current tax assessment in the amount of $20,000.00.

*Discussion and Conclusions of Law*

**Reasonably Equivalent Value**

The trustee may avoid a transfer of debtor's property made on or within one year of debtor's bankruptcy filing if the debtor was insolvent on the date of transfer or became insolvent as a result of the transfer, and the debtor received less than a reasonably equivalent value in exchange for the transfer. *See* 11 U.S.C.

§ 548(a)(2).[1] The parties have stipulated that the tax sale at issue constituted a transfer of the debtor's property, within one year of debtor's bankruptcy, while the debtor was insolvent. The sole remaining issue for the purposes of a fraudulent transfer under § 548(a)(2) is whether the transfer was for reasonably equivalent value. As the court has found, the tax sale price for the property was $8,000.00; the only evidence of value for the realty is its assessed value for property tax purposes of $20,000.00.

Determination of whether a transfer is for reasonably equivalent value is particularly troublesome, because the term "reasonably equivalent" is not defined or explained by the Bankruptcy Code. As a result, the determination has been approached by the courts on a case by case basis. In most cases, a totality of the circumstances analysis is appropriate, and the court should consider factors such as good faith, the difference between the amount paid and the fair market value, the percentage of the fair market value paid, and whether the transfer is the result of an arm's length transaction. *See In re Morris Communications NC, Inc.,* 914 F.2d 458, 467 (4th Cir.1990). However, in the context of some types of forced sales, these factors may not be determinative or appropriate.

The United States Supreme Court addressed the issue of reasonably equivalent value in the context of a mortgage foreclosure sale in *BFP v. Resolution Trust Corp.,* 511 U.S. 531, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994). The majority opinion presented the question as:

> whether the consideration received from a noncollusive, real estate mortgage foreclosure sale conducted in conformance with applicable state law conclu-

1. Subsequent to the filing of this adversary proceeding, section 548(a)(2) was redesignated as 548(a)(1)(B) by the Religious Liberty and Charitable Donation Protection Act of 1998, Pub.L. No. 105–183. This amendment became effective June 19, 1998, and applied to pending bankruptcy cases. However, for consistency with the parties' pleadings, the court will use the former designation of Code section 548(a)(2) in this memorandum opinion.

sively satisfies the Bankruptcy Code's requirement that transfers of property by insolvent debtors within one year prior to the filing of a bankruptcy petition be in exchange for "a reasonably equivalent value."

*Id.* at 533, 114 S.Ct. 1757. The Supreme Court rejected the use of fair market value "as the benchmark against which determination of reasonably equivalent value is to be measured" in the context of an otherwise lawful mortgage foreclosure sale of real estate. *Id.* at 536–37, 114 S.Ct. 1757. The Court reasoned that the term "fair market value," while present in other sections of the Bankruptcy Code (e.g. § 522), was deliberately avoided in section 548. *Id.* at 537, 114 S.Ct. 1757. More importantly, the Court concluded that the concept of fair market value "presumes market conditions that, by definition, simply do not obtain in the context of a forced sale." *Id.* at 538, 114 S.Ct. 1757. Thus, property that must be sold within the strictures of a forced sale process "is simply worth less" than the fair market value of the same property. *Id.* at 539, 114 S.Ct. 1757.

The Court in *BFP* addressed the split in the Circuits [2] over how to interpret reasonably equivalent value in the context of foreclosure sales and held that

we decline to read the phrase "reasonably equivalent value" in § 548(a)(2) to mean, in its application to mortgage foreclosure sales, either "fair market value" or "fair foreclosure price" (whether calculated as a percentage of fair market value or other wise). We deem,

as the law has always deemed, that a fair and proper price, or a "reasonably equivalent value," for foreclosed property, is the price in fact received at the foreclosure sale, as long as all the requirements of the State's foreclosure law have been complied with.

*Id.* at 545, 114 S.Ct. 1757. The Court was careful to note that its opinion extended only to mortgage foreclosures of real estate and that "[t]he considerations bearing upon other foreclosures and forced sales (to satisfy tax liens, for example) may be different." *Id.* at 537 n. 3, 114 S.Ct. 1757.

■ The principal issue before this court is whether the standards for reasonably equivalent value developed by the Supreme Court in *BFP* should be extended to judicial tax sales. Although the Supreme Court limited its ruling to mortgage foreclosures, a number of recent opinions have applied the *BFP* holding to other forced sale situations, including tax sales. Most of those courts that have extended the *BFP* rule in this area have done so only after determining that the protections afforded the debtor by a state's tax sale foreclosure procedures are at least as adequate as the protections afforded by state mortgage foreclosure procedures. *See In re Samaniego*, 224 B.R. 154 (Bankr. E.D.Wash.1998); *Russell–Polk v. Bradley (In re Russell–Polk)*, 200 B.R. 218 (Bankr. E.D.Mo.1996); *Hollar v. Myers (In re Hollar)*, 184 B.R. 243 (Bankr.M.D.N.C. 1995); *Lord v. Neumann (In re Lord)*, 179 B.R. 429 (Bankr.E.D.Pa.1995). *In re Lord*

---

**2.** The "Durrett rule," drawn from dicta in the Fifth Circuit case of *Durrett v. Washington Nat'l Ins. Co.*, 621 F.2d 201, 203 (5th Cir. 1980), was applied by some courts to invalidate any foreclosure sale for less than 70% of fair market value. The Durrett rule was not only widely criticized, but it was specifically rejected by the Supreme Court. *See BFP*, 511 U.S. at 536–37, 114 S.Ct. 1757. The plaintiff mistakenly relies on this court's opinion in *C & M Inv., L.L.C. v. Jones (In re Jones)*, 209 B.R. 380 (Bankr.E.D.Va.1997) to support his argument that this court has adopted the "Durrett rule." The debtor in *In re Jones*, confronted with the imminent foreclosure and

loss of his realty, entered into an arm's length transaction, for which he received a high percentage of the fair market value of his property. *See id.* at 386. Under those circumstances, the debtor failed to prove that he received less than reasonably equivalent value for the transfer. *See id. In re Jones* addressed an arm's length transaction and not a foreclosure or other forced sale. As a result, the rule established in *BFP* did not apply. *See id.* The court did not adopt the "Durrett rule" but simply considered the percentage of fair market value paid as one of several relevant factors to determine reasonably equivalent value outside the context of forced sales.

identified the three basic procedural protections at issue as "notice, reasonable opportunity to cure and strict adherence to statutory requirements," *Id.* at 434 (citing *Vermillion v. Scarbrough (In re Vermillion)*, 176 B.R. 563, 569 (Bankr.D.Or. 1994)), and concluded that "the sufficiency of the protections built into the tax sale foreclosure law is determinative of whether the price paid at that sale will be deemed conclusive evidence of equivalent value." *Id.* at 434 (citing *BFP*, 511 U.S. at 531, 114 S.Ct. 1757).

An analysis of Virginia's tax sale foreclosure procedures reveals protections at least as adequate as those provided by mortgage foreclosure procedures. *See* VA. CODE ANN. § 58.1–3965 *et seq.* Section 58.1–3965(A) provides that land may be sold for taxes on the land that are "delinquent on December 31 following the second anniversary of the date on which such taxes have become due." VA.CODE ANN. § 58.1–3965(A). The taxing authority must provide notice to the taxpayer of the delinquent taxes at least thirty days prior to instituting any judicial proceeding to sell the land. *See id.* The taxing authority must also give notice of the sale at least once in a newspaper of general circulation in the locality, at least thirty days prior to the date judicial proceedings are to begin. *See id.* The taxpayer may redeem the property at any time prior to the day of sale. *See id.* § 58.1–3965(B).

Virginia's mortgage or deed of trust foreclosure procedures are governed by VA.CODE ANN. § 55–59 *et seq.* Section 55–59 provides that upon default in payment of the debt secured by the deed of trust, and at the request of any beneficiary [secured creditor], the trustee may accelerate payments, take possession of the property and proceed to sell the property at auction. VA.CODE ANN. § 55–59. The trustee or secured creditor must give the owner written notice of the time, date, and place of the proposed sale at least fourteen days prior to the sale. *See id.* § 55–59.1(A). The trustee must also advertise the proposed sale in a newspaper of general circulation. Furthermore, the sale must be held no earlier than eight days following the first advertisement and no more than 30 days following the last advertisement. *See id.* § 55–59.2(A). The owner has the equitable right to redeem the property up until the time of sale. *See Rolen v. Southwest Va. Nat'l Bank (In re Rolen)*, 39 B.R. 260, 263–64 (Bankr.W.D.Va.1983).

It can thus be seen that the tax sale foreclosure procedures provided in VA. CODE ANN. § 58.1–3965 *et seq.* give the delinquent taxpayer more than adequate protection in the form of notice, reasonable opportunity to cure, and strict adherence to statutory requirements. Here, the parties are agreed that the judicial proceeding and resulting tax sale of debtor's real property were conducted in strict adherence to the statutory requirements of VA. CODE ANN. § 58.1–3965 *et seq.* The debtor was given adequate notice of the proposed sale and reasonable opportunity to cure by exercising the equitable right of redemption, which he failed to do.

For the foregoing reasons, the court concludes as a general matter that the standards for reasonably equivalent value developed by the Supreme Court in *BFP* apply with equal force in the context of a judicial tax sale conducted in accordance with Virginia law. The bid accepted by King William County for the property at the regularly conducted tax foreclosure sale satisfied the "reasonably equivalent value" standard of § 548(a)(2).

### Status of the Tax Sale

Although the court finds that the Supreme Court's *BFP* decision should apply to a properly conducted tax sale under Virginia law, the question remains here as to the effect, if any, of the fact that the Virginia circuit court has not confirmed the sale.

VA.CODE ANN. § 58.1–3967, which provides procedures for a delinquent tax sale of real estate, states the following:

. . .

Such proceedings shall be held in accordance with the requirements, statutory or arising at common law, relative to effecting the sale of real estate by a creditor's bill in equity to subject real estate to the lien of a judgment creditor. . . .

VA.CODE ANN. § 58.1–3967 (Michie's 1957).

■ The general provisions for judicial sales are found in VA.CODE ANN. § 8.01–96, et seq.[3] Under the Virginia practice, a judicial sale is conducted by an officer designated by the circuit court or by statute. Following the sale, the court must give its judicial approval or sanction, known as "confirmation." 11 Michie's Jurisprudence, Judicial Sales And Rentings §§ 56, 57. A sale is not complete until confirmation, which lies within the broad discretion of the circuit court. Id. §§ 58, 59.[4]

With respect to tax sales, VA.CODE ANN. § 58.1–3969, among other provisions, authorizes the circuit court to designate a special commissioner to conduct a sale. It also contains the following sentence:

. . . The sale price achieved at a public auction shall be prima facie, but rebuttable, evidence of the value of the property for purposes of the approval of the sale. . . .

VA.CODE ANN. § 58.1–3969 (Michie's 1997). The well established rule in Virginia is that where the judicial sale is duly advertised and fairly conducted, an upset bid will

not be received on the sole ground of inadequacy of price, unless it is clearly established by evidence that the price offered at the sale is grossly inadequate. *Chandler v. Chandler's Adm'rs*, 174 Va. 95, 5 S.E.2d 523, 524 (1939) (property appraised at $6,000.00; bid at sale of $3,050.00 upheld); *see also Schweitzer v. Stroh*, 182 Va. 842, 30 S.E.2d 689, 692 (1944); *Addison v. Saunders' Heirs*, 179 Va. 43, 18 S.E.2d 312, 314 (1942).[5]

In the absence of debtor's filing bankruptcy, the Virginia circuit court would have either confirmed the sale or, if not, required a new sale. If the court ordered confirmation, as seems probable under the Virginia case law, that would complete the sale. Confirmation of the sale would cut off any right of the debtor in the property because he failed to redeem it pursuant to Virginia Code § 58.1—3965B.

The debtor, having failed to redeem the property, filed bankruptcy before confirmation of the sale. In effect, he seeks to substitute a chapter 13 payment plan for the all or nothing redemption payment. This court is confronted with the choice either of allowing the tax sale to be approved or disapproved by the state court or of invalidating the entire sale because of the absence of confirmation before debtor filed his bankruptcy petition.

■ Given these choices, it is much preferable for the court to allow the state judicial process to be completed pursuant to Virginia statute. If the circuit court

**3.** § 8.01–96. Decree for sale; how made; bond of commissioner.—In decreeing a sale under any provisions of law, the court may provide for the sale of property in any part of the Commonwealth, and may direct the sale to be for cash, or on such credit and terms as it may deem best, and it may appoint one or more special commissioners to make such sale.

VA.CODE ANN. § 8.01–96 (Michies 1992).

**4.** With respect to finality, a tax auction sale under the Virginia statutes is distinguishable from a foreclosure auction under a deed of trust. The tax sale requires confirmation by the court. Court approval is not required of a

foreclosure under a power of sale contained in a deed of trust. The deed of trust sale is complete when the highest bid is accepted at auction, and the trustee signs a memorandum of sale. *See Abdelhaq v. Pflug*, 82 B.R. 807 (E.D.Va.1988); *In re Cole*, 88 B.R. 763, 766 (Bankr.E.D.Va.1988); 13A Michie's Jurisprudence, Mortgages and Deeds of Trust, § 132.

**5.** All of the cited cases concerned whether a subsequent upset or higher bid should prevail over the bid accepted at sale. In each case the Virginia Supreme Court of Appeals rejected the upset bid in favor of the sale bid.

346

does not confirm the sale and orders a new sale, then the tax collection process must give way to debtor's bankruptcy. If the present sale is confirmed then the tax sale will be complete, and debtor's alleged fraudulent transfer action must fail.

Therefore, the court will *sua sponte* grant King William County relief from the automatic stay for the purpose of presenting the sale to the circuit court for confirmation. If the sale is confirmed then judgment will be entered for defendants in this adversary proceeding.

However, if the circuit court does not order confirmation and instead requires a new sale, then further proceedings by King William County will be stayed pursuant to 11 U.S.C. § 362(a).

An order consistent with this opinion will be entered.